In the
United States Court of Appeals
For the Seventh Circuit

No. 99-2609

United States of America,

Plaintiff-Appellee,

v.

Christopher A. Moore,

Defendant-Appellant.


Appeal from the United States District Court
for the Central District of Illinois, Rock
Island Division.
No. 98 CR 40038--Michael M. Mihm, Judge.


Argued January 6, 2000--Decided May 31, 2000



  Before Coffey, Flaum and Kanne, Circuit
Judges.

  Kanne, Circuit Judge.  Police arrested
Christopher A. Moore on probable cause
that he possessed child pornography after
his apartment manager found a magazine
outside of Moore's residence bearing
Moore's name and containing pictures of
nude children. Following his arrest, he
consented to a search of his apartment
during which police found other
depictions of child pornography. Moore
moved to suppress the fruits of the
search because the police officer lacked
probable cause to arrest him, but the
motion was denied. Moore pleaded guilty
to three counts related to the possession
of child pornography and was sentenced to
121 months in prison. He appeals the
denial of the motion to suppress. Finding
no error, we affirm the conviction.

I.  History

  Officer Dave Tertipes of the Moline,
Illinois, police department responded to
a call on June 25, 1998, to meet the
manager of an apartment complex
concerning "pictures of naked children."
On his arrival, the manager gave Tertipes
a magazine entitled "Ophelia Editions"

that had been found in the hallway of the apartment complex where Moore lived. The magazine was addressed to "Chris Moore."

The cover of the magazine featured a drawing of a clothed girl in a provocative pose who appeared to be about 10 to 12 years old and described the contents as "Fine Art Photography Literature  Non-Fiction." The twenty-eight-page magazine was a catalogue accompanied by descriptions and sample photos of about eighty other publications, including picture books of nude children and stories of children en gaged in sex. The magazine contained a disclaimer purportedly affirming that the contents had been reviewed by an attorney and did not contain "lascivious exhibition[s]" of persons under eighteen. Tertipes, who had no special training in identifying child pornography, found at least three photographs that he considered illegal under the state child pornography law. The catalogue also contained many written descriptions of sexual contact with and among minors.

Based on this review, Tertipes knocked on Moore's apartment door and identified himself to Moore, who invited him to enter. Tertipes asked Moore about the magazine, and Moore admitted to ordering the magazine over the Internet. Moore characterized himself as a nudist who "likes to view the human body in its natural state." Tertipes asked Moore to come to the police station, and Moore initially complied voluntarily. Once in the car, Moore asked if he could leave. Tertipes consulted with his supervisor who said, "He doesn't have a choice. Bring him down." Tertipes placed Moore under arrest.

Once Moore arrived at the station, Lt. Steve Brockway took over the investigation. Brockway, who had previous training and experience in child sexual abuse and pornography cases, reviewed the magazine and concluded that it contained child pornography. Brockway read Moore his Miranda rights. Following a detailed explanation of his rights, Moore agreed to waive his rights and signed a voluntary waiver form. During questioning, which lasted about two hours, Moore referred to himself as a nudist but eventually admitted that he had a proclivity toward sex with children

and possessed other depictions of child pornography at his apartment.

Brockway informed Moore that he thought he had probable cause to obtain a search warrant and asked Moore if he would consent to a search of his apartment and vehicle. Moore agreed and signed a form consenting to the warrantless search of his home and vehicle. No evidence indicated that Moore was incapable of voluntary consent or that Moore was threatened or coerced in any way. After signing the form, Moore ceased the interview.

The police executed the warrant and found an album containing eighty-nine photographs of minor boys posed provocatively or engaged in sexual acts and a stack of computer-generated photos of boys engaged in sexual acts. Police seized Moore's computer, which contained images of child pornography and e-mail correspondences detailing Moore's efforts to arrange meetings with children for the purpose of engaging in sex. Other publications, including some that were advertised in "Ophelia Editions," were also found.

Subsequently, Moore challenged the legality of the search under the Fourth Amendment, but the motion to suppress was denied.

II.  Analysis

Moore presents two reasons why the search should be suppressed. First, he argues that police lacked probable cause to arrest him, and therefore, his consent to the search of his apartment was involuntary. Second, he contends that as a matter of law, the police should seek probable cause review from a neutral magistrate before executing an arrest. On a denial of a motion to suppress, we review the lower court's findings of fact for clear error and its conclusions of law de novo. See United States v. Scheets, 188 F.3d 829, 835 (7th Cir. 1999). The application of facts to a legal standard such as probable cause constitutes a mixed question of law and fact that we review de novo. See United States v. Johnson, 170 F.3d 708, 713 (7th Cir. 1999).

A.  Prior Review

In Roaden v. Kentucky, 413 U.S. 496, 506 (1973), the Supreme Court held that the government must obtain a warrant before seizing allegedly obscene material. The case involved the seizure of a film by a county sheriff who had viewed the film and thought it violated the state's-anti-obscenity law. The Court reasoned that the material in question "fell arguably within First Amendment protection" and its seizure "is plainly a form of prior restraint." Id. at 504. A "prior restraint of the right of expression, whether by books or films, calls for a higher hurdle in the evaluation of reasonableness." Id. The Court demanded "the most scrupulous exactitude" in applying the warrant requirement "when the 'things' [to be seized] are books, and the basis for their seizure is the ideas which they contain." Id. (quoting Stanford v. Texas, 379 U.S. 476, 486 (1965)).

Moore asks us to extend this rule to require prior judicial approval of arrests for possession of child pornography. On one occasion, the Court expressly refused to decide whether a warrant is required to arrest a suspect on obscenity charges, see Maryland v. Macon, 472 U.S. 463, 467 (1985), and we reject Moore's suggestion for two reasons.

First, Roaden involved the warrantless seizure of obscene material, not the arrest of a person, and that distinction changes the standard governing police conduct. While arrest may serve in some circumstances as a prior restraint, its primary purpose is to bring a suspect before a magistrate to answer a charge. It implicates Fourth Amendment rights, which the Court has balanced against the interest in effective law enforcement by requiring probable cause prior to the arrest. See Illinois v. Gates, 462 U.S. 213, 237-39 (1983); Gerstein v. Pugh, 420 U.S. 103, 112 (1975) (describing probable cause as a "practical, nontechnical conception affording the best compromise" between the interests of individual liberty and effective law enforcement). Probable cause, contrary to its name, demands even less than "probability," see United States v. Burrell, 963 F.2d 976, 986 (7th Cir. 1992), which is far less than the "higher hurdle" and "most

scrupulous exactitude" required for a seizure of First Amendment material.

Ideally, the judgment of probable cause is made in a warrant proceeding before a detached, neutral magistrate, but it also can be made, and routinely is made, by police officials. See Gerstein, 420 U.S. at 112.  In Gerstein, the Court noted that although "the Court has expressed a preference for the use of arrest warrants when feasible . . . it has never invalidated an arrest supported by probable cause solely because the officers failed to secure a warrant." Id. at 113 (citations omitted). But see Payton v. New York, 445 U.S. 573, 576 (1980) (prohibiting warrantless entries into a suspect's dwelling to effect felony arrest). Five years after Payton, the Court decided Maryland v. Macon and expressly left open the issue of whether a warrant may be required before an arrest on obscenity charges. 472 U.S. at 467. No authorities cited by either party to this appeal, nor any found by this Court have taken this additional step to require arrest warrants in any instance other than arrests in a suspect's home. The protection of First and Fourth Amendment values does not compel this Court to take this step today.

The arrest of a suspect for possession of contraband does not constitute a prior restraint in the way the seizure of books or films does. While at first glance it may seem odd to require more judicial protection for the liberty of one's books than for one's body, the distinction reflects this country's great concern with the chilling effect on protected speech brought on by a government seizure. An ordinary arrest implicates an individual's Fourth Amendment freedoms and must meet the constitutional standard of reasonableness. The seizure of an individual's books implicates both First and Fourth Amendment liberties, for which the Supreme Court has required heightened judicial protection to afford the right to free expression the breathing room it needs to survive. In some circumstances, an arrest might implicate First Amendment rights as well, but Moore's arrest did not act as a prior restraint, and therefore we need not reach that issue.

Given the facts of this case, we decline to extend this level of heightened

protection to arrests that do not constitute prior restraints. Officer Tertipes arrested Moore based on probable cause to believe he possessed child pornography. In terms of the First Amendment, Moore was not a speaker, and his arrest cannot be considered a prior restraint. Therefore, a warrantless arrest could be effected if the situation as known to Tertipes met the requirements of probable cause.

The second reason we reject Moore's argument that a warrant was required for his arrest lies in the distinction between arguably obscene material at issue in Roaden, and child pornography. Like obscenity, the Court has held that child pornography is not protected expression, and the states may regulate it without offending the Constitution. See New York v. Ferber, 458 U.S. 747, 764 (1982); see also United States v. Andersson, 803 F.2d 903, 907 n.3 (7th Cir. 1986). However, the concern with chilling protected speech by regulating arguably obscene material, which is presumptively protected under Roaden, 413 U.S. at 504, is outweighed by the compelling state interests in protecting children in the case of child pornography. See Ferber, 458 U.S. at 756-59. Accordingly, the states are free to regulate child pornography without the strictures of the complex, community standards test required for obscenity under Miller v. California, 413 U.S. 15, 24-25 (1973). See Ferber, 458 U.S. 764-65.

The application of child pornography standards involves a more limited inquiry than Miller requires, see Ferber, 458 U.S. at 764-65, and is within the competency and experience of police officers making a probable cause determination. As such, we see no need to extend Roaden to require pre-arrest judicial oversight of whether particular material constitutes child pornography.

B. Probable Cause

We now reach the issue of whether the magazine in this case provided Officer Tertipes with probable cause to arrest Moore. We have held that probable cause "exists if, at the moment the arrest was made, the facts and circumstances within the officers' knowledge . . . were

sufficient to warrant a prudent person in believing that an offense has been committed." Burrell, 963 F.2d at 986 (citation omitted). "Probable cause requires more than bare suspicion but need not be based on evidence sufficient to support a conviction, nor even a showing that the officer's belief is more likely true than false." Id. (quoting Brinegar v. United States, 338 U.S. 160, 175 (1949)). In addition, because the situations that officers face "in the course of executing their duties are more or less ambiguous," probable cause allows for reasonable mistakes by the officer. Gerstein, 420 U.S. at 112.

To effect a lawful arrest, Tertipes needed to have probable cause that Moore possessed child pornography as defined by Illinois law. Illinois law prohibits the knowing possession of "any film, videotape, photograph or other similar visual reproduction . . . of any child . . . engaged in any activity described in subparagraphs (i) through (vii)." 720 Ill. Comp. Stat. 5/11-20.1(a)(6). Subparagraph (vii) prohibits a child "depicted or portrayed in any pose, posture or setting involving a lewd exhibition of the unclothed genitals, pubic area, buttocks, or, if such person is female, a fully or partially developed breast of the child or other person." 720 Ill. Comp. Stat. 5/11-20.1(a)(1)(vii).

In determining whether a display is "lewd," Illinois has applied the factors discussed in United States v. Dost, 636 F.Supp. 828, 832 (S.D. Cal. 1986), aff'd sub nom. United States v. Wiegand, 812 F.2d 1239 (9th Cir. 1987). See People v. Lamborn, 708 N.E.2d 350, 354 (Ill. 1999). The Dost test considers the following six characteristics: (1) whether the focal point is on the child's genitalia or pubic area; (2) whether the setting is sexually suggestive, i.e., in a place or pose generally associated with sexual activity; (3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child; (4) whether the child is fully or partially clothed, or nude; (5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; and (6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer. See Dost, 636 F.Supp. at 832. The

visual depiction need not involve all these factors to be considered lewd, and the court must consider the overall content of the depiction, taking into account the age of the minor. See Lamborn, 708 N.E.2d at 355; see also United States v. Knox, 32 F.3d 733, 746 n.10 (3d Cir. 1994).

Officer Tertipes based his belief that the magazine contained child pornography on three photographs contained in the magazine. Two photos in the magazine Boyhood Australia showed young boys naked in the wilderness. One photo showed a boy who appeared to have stopped while walking across a stream. His exposed genitals were the focal point of the photograph. The second photograph showed a boy climbing a tree with his legs separated and his buttocks near the center of the photo. Both photos reasonably could be considered to depict the boys in unnatural poses designed to elicit sexual responses from the viewer. While neither appear to depict sexual activity or sexuality, the poses of naked children that emphasize their exposedgenitalia and buttocks seem designed to provoke a sexual response.

The third photograph advertised a publication called The Age of Innocence. It showed two naked girls embracing, one standing behind the other with her arms around the girl in front of her. Both girls seemed to be reaching for the other's pubic areas. The front girl's breasts are the focal point of the photograph, and a blurb accompanying the photo describes the "adolescent girls" as "yummy" and the photos as "mostly above-the-waist (but ever-so-erotic)." The position of the children suggests the two girls are willing to engage in sexual activity and seems designed to elicit a sexual response in the viewer.

At the suppression hearing, Officer Tertipes testified that he considered the three photographs to be lewd, which he defined in his own words as "something that . . . would disturb someone . . . maybe an inappropriate act, maybe the normal person would view to be unacceptable." His definition does not track the statutory language, but an officer's on-the-spot probable cause determination does not require a precise legalistic assessment of the publication

and application of the relevant case law. Tertipes adequately identified three photographs that gave him probable cause to believe Moore possessed child pornography within the meaning of Illinois law. Tertipes followed up his assessment of the magazine, which included not just the photographs but the narratives regarding sex with children, by confirming Moore's connection to the magazine and by interviewing Moore. Based on all of this information, Tertipes had probable cause to believe Moore had knowingly committed the crime of possession of child pornography.

III. Conclusion

We conclude that Officer Tertipes had probable cause to believe Moore possessed child pornography, justifying Moore's arrest and subsequent voluntary interrogation. Therefore, Moore's Fourth Amendment right to be free from unreasonable searches of his premises was not violated when he voluntarily granted the Moline police permission to search his apartment and seize the illegal material found there. The district court's denial of the motion to suppress is Affirmed.