Dale E. MCCORMICK and Curtis
A. Kastl II, Plaintiffs,

v.

CITY OF LAWRENCE,
et al., Defendants.

No. CIV.A. 03–2195–GTV.

United States District Court,
D. Kansas.

July 11, 2003.

Dale E. McCormick, Lawrence, KS, pro se.

Curtis A. Kastl, II, Lawrence, KS, pro se.

Randall F. Larkin, Gerald L. Cooley, Gilliland & Hayes, PA, Lawrence, KS, for Defendants.

Steve Phillips, Kansas Attorney General, Topeka, KS, M. J. Willoughby, Office of Attorney General Topeka, KS, for Mark Knight.

## MEMORANDUM AND ORDER

VANBEBBER, Senior District Judge.

Plaintiffs Dale E. McCormick and Curtis A. Kastl II, proceeding *pro se*, bring this

civil rights action pursuant to 42 U.S.C. § 1983. Plaintiffs allege that Defendants, Lawrence, Kansas police officers, the City of Lawrence, and a state prosecutor, violated their First, Fourth, Fifth, and Fourteenth Amendment rights during and after Plaintiffs' arrests in July of 2002 and at various other times. All Defendants but the state prosecutor have moved to dismiss the action (Doc. 12) based on the doctrines of res judicata and qualified immunity and the limitations on municipal liability. For the following reasons, the court denies Defendants' motion in part and grants it in part. Counts VIII through XI are dismissed.

## I. STANDARDS FOR JUDGMENT

Defendants move to dismiss Plaintiffs' complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. In support of their res judicata arguments, Defendants ask the court to review documents on file in Case No. 02–2135–JWL in the United States District Court for the District of Kansas. All parties agree that because of such request, Defendants' motion to dismiss should be converted to a motion for summary judgment with respect to Defendants' res judicata arguments. The court has broad discretion in deciding whether to convert a motion to dismiss into a motion for summary judgment, and will do so here. *See Prager v. LaFaver*, 180 F.3d 1185, 1189 (10th Cir.1999) (citing *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir.1997)). The court takes judicial notice of the facts supported by documents on file in the District of Kansas and reviews Defendants' res judicata arguments under the standard for summary judgment.

### A. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to in-terrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). Lack of a genuine issue of material fact means that the evidence is such that no reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be met by showing that there is a lack of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* The court must consider the record in the light most favorable to the nonmoving party. *Bee v. Greaves*, 744 F.2d 1387, 1396 (10th Cir.1984).

### B. Motion to Dismiss Standard

The remainder of Defendants' arguments will be evaluated pursuant to the

standard for a motion to dismiss. A Rule 12(b)(6) motion to dismiss will be granted only if it appears beyond a doubt that the plaintiff is unable to prove any set of facts entitling him to relief under his theory of recovery. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). "All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true." *Swanson v. Bixler,* 750 F.2d 810, 813 (10th Cir.1984). The court must view all reasonable inferences in favor of the plaintiff, and the pleadings must be liberally construed. *Id.;* Fed.R.Civ.P. 8(f). The issue in reviewing the sufficiency of a complaint is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds by Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

### C. Standards as Applied to Pro Se Plaintiffs

Because Plaintiffs are proceeding *pro se,* the court affords them more leniency in construing their complaint. *Asselin v. Shawnee Mission Med. Ctr., Inc.,* 894 F.Supp. 1479, 1484 (D.Kan.1995) (citation omitted). The court may not, however, assume the role of advocate for Plaintiffs simply because they are proceeding *pro se. Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir.1991). Although not required to precisely state each and every element of their claims, Plaintiffs must at least advance minimal factual allegations on the material elements of their claims to survive a Rule 12(b)(6) motion to dismiss. *Miller v. Brungardt,* 904 F.Supp. 1215, 1217 (D.Kan.1995) (citing *Hall,* 935 F.2d at 1110).

### II. FACTUAL BACKGROUND

The following facts are based upon the allegations in Plaintiffs' complaint and documents on file in the United States District Court for the District of Kansas. All facts are viewed in the light most favorable to Plaintiffs. Additional facts will be incorporated throughout this Memorandum and Order as necessary.

### A. Facts Relevant to Res Judicata Analysis

On March 26, 2002, Plaintiff McCormick filed a complaint in *McCormick v. City of Lawrence,* Case No. 02–2135–JWL. On April 18, 2002, Plaintiff McCormick filed an amended complaint in that case.

Plaintiffs McCormick and Kastl were arrested by Defendants Mik Shanks and Scott Hofer on July 13, 2002. On August 5, 2002, Plaintiff McCormick filed a motion to file a second amended complaint in Case No. 02–2135–JWL and Plaintiff Kastl filed a motion to intervene, based partly on the events of July 13, 2002. The court granted both Plaintiffs' motions in part. Plaintiff McCormick failed to ever file his second amended complaint. Plaintiff Kastl did file a complaint on September 24, 2002, bringing claims against several defendants, including Officers Shanks and Hofer, as well as Officers Gil Crouse, Susan Hadl, and Damon Thomas. Officers Crouse and Hadl filed a motion to dismiss, although Plaintiff Kastl claims he never served any Defendants in Case No. 02–2135–JWL. Plaintiff Kastl failed to respond to the motion to dismiss, and the court directed him to show cause why the motion should not be granted as uncontested. When Plaintiff Kastl failed to respond to the order, the court dismissed his complaint against Officers Crouse and Hadl. Plaintiff Kastl has never served any of the other defendants in Case No. 02–2135–JWL.

On April 22, 2003, Plaintiffs McCormick and Kastl filed the present action. Most

of the parties, allegations, and claims in this case are identical to parties, allegations, and claims that would have been present in Case No. 02–2135–JWL had Plaintiff McCormick ever filed his second amended complaint or had Plaintiff Kastl ever served Officers Shanks or Hofer.

### B. Facts Relevant to Qualified Immunity/Municipal Liability Analysis

Between August 18, 2001 and July 13, 2002, Plaintiff McCormick verbally protested and/or recorded police activity in Lawrence, Kansas on approximately fifty occasions. He alleges that at least twenty times, Lawrence police officers have retaliated against his verbal challenges and protests by threatening arrest. Plaintiff McCormick also claims that, in response to his protected speech, he has been physically attacked on three occasions and robbed and kidnaped on two of those three occasions.

#### 1. July 13, 2002 Incident

The allegations in Plaintiffs' complaint are as follows: On July 13, 2002, Plaintiffs McCormick and Kastl witnessed a traffic stop initiated by Defendant Hofer. Plaintiff McCormick began protesting the stop and recording it with a camcorder from the parking lot of a McDonalds restaurant. Defendant Shanks arrived on the scene and Plaintiff McCormick began verbally criticizing and heckling Defendant Shanks from the parking lot. Defendant Shanks responded by directing two spotlights on Plaintiff McCormick, thwarting his attempt to record the incident. Plaintiff McCormick changed his position repeatedly to avoid having his camcorder "blinded" by the spotlights. Each time, Defendant Shanks redirected the spotlights at the camcorder.

Finally, both Plaintiffs moved to a public sidewalk approximately twenty feet from the traffic stop. Defendant Shanks threatened Plaintiff McCormick with arrest if he "interfered" with Defendant Shanks. Plaintiff McCormick responded with words to the effect of, "Was that a threat to arrest me?" Defendant Shanks then responded with words to the effect of, "Are you interfering with my investigation? I think you are. You're under arrest."

According to Plaintiffs, Defendant Shanks rushed at Plaintiffs and attacked them. Defendant Hofer joined him in the attack. Plaintiffs allege that Defendants Shanks and Hofer "physically seized plaintiffs in a very violent fashion, grabbing, wrenching, pushing and tackling plaintiffs in a manner that was rude, aggressive and violent, and in such a way that great bodily injury was a likely result." Defendants Shanks and Hofer then took Plaintiffs to jail and charged them with obstruction of legal duty under K.S.A. § 21–3808.

Defendants Shanks and Hofer took possession of Plaintiffs' "recording devices"— the camcorder and at least one audio recorder—during the arrest and later searched the devices and their tapes without Plaintiffs' consent, a warrant, exigent circumstances, or probable cause to believe such devices were contraband or evidence of a crime. Defendants Justin Stipanovich and Dean Brown searched Plaintiffs' camcorder and video tape on or about August 1, 2002 and Defendants Mike Pattrick and Dean Brown searched Plaintiffs' camcorder and video tape on September 5, 2002. Plaintiffs also allege that on July 7, 2002, Defendants Warren Burket and Justin Stipanovich searched a micro-cassette recorder and tape that had been taken from Plaintiff McCormick on January 10, 2002.

Plaintiffs allege that on July 14, 2002, Defendant Shanks swore two probable

cause affidavits regarding the incident, knowing that the instruments did not support probable cause, thereby causing Plaintiffs to be involved in court proceedings from July 14, 2002 until April 8, 2003.

### 2. June 28, 2002 Incident

Plaintiff McCormick alleges that on June 28, 2002, he began protesting a sobriety checkpoint supervised by Defendant Kirk Fultz. Plaintiff McCormick alleges that the following conversation took place:

Fultz: Don't walk past me.

McCormick: Don't walk past you?

Fultz: Don't get any closer than right there (pointing to line on sidewalk)

McCormick: Are you going to arrest me if I do?

Fultz: Yes.

McCormick: Can I say anything to them?

Fultz: No.

McCormick: I can't say anything to them? (Referring to police officers on sidewalk.)

Fultz: No. They're doing an investigation.

McCormick: Are you going to arrest me if I say something to them?

Fultz: If you impede the investigation.

McCormick: No, if I say something to them, are you going to arrest me?

Fultz: You heard what I said.

McCormick: Well, I just want to know. I want to say something to them and I want to know if I can or not, officially?

Fultz: No, you can't say anything to them.

McCormick: I can't say anything to them, and that's the official position of the Lawrence Police Department right here right now?

Fultz: You heard what I said.

## III. DISCUSSION

### A. Res Judicata

Defendants first argue that the doctrine of res judicata bars Plaintiff's claims. Res judicata is an affirmative defense that must be raised and established by a defendant. Fed.R.Civ.P. 8(c). Res judicata functions on the premise that the finality of earlier judgments must be advanced and adhered to by subsequent courts. 18 James Wm. Moore, *Moore's Federal Practice* § 131.13[1] (3d ed.1999). Under res judicata, commonly referred to as claim preclusion, a final judgment on the merits precludes the parties or their privies from relitigating any claims that were or could have been raised in that action. *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). Invocation of res judicata "relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication." *Allen*, 449 U.S. at 94, 101 S.Ct. 411.

 For the doctrine of res judicata to apply, the following three conditions must be satisfied: (1) the parties must be identical or in privity; (2) the suit must be based on the same cause of action; and (3) a final judgment on the merits must have been made in the prior action. *Yapp v. Excel Corp.*, 186 F.3d 1222, 1226 (10th Cir.1999) (citing *King v. Union Oil Co. of Cal.*, 117 F.3d 443, 445 (10th Cir.1997)). The key issue in this case is whether there is a final judgment on the merits in Case No. 02–2135–JWL.

### 1. Plaintiff McCormick

■ Defendants advance a novel argument: Because Plaintiff McCormick received permission to add the claims and parties present in this case to Case No. 02–2135–JWL, but neglected to do so, those claims and parties have essentially been "dismissed" with prejudice, constituting a final judgment on the merits. Defendants rationalize that there are only two options for the characterization of Plaintiff McCormick's claims in Case No. 02–2135–JWL: they have either been dismissed or are pending. Defendants contend that the claims must have been dismissed because they are not pending—the first amended complaint is controlling in the case, not the second amended complaint that Plaintiff McCormick was granted leave to file. The court is not persuaded by Defendants' argument.

Plaintiff McCormick elected not to file the claims. The claims therefore are neither pending nor dismissed; they simply have not been made. Because there has not been a final judgment on the merits regarding the claims, they are not precluded by the doctrine of res judicata.

### 2. Plaintiff Kastl

■ Plaintiff Kastl, unlike Plaintiff McCormick, did file a complaint in Case No. 02–2135–JWL alleging claims against parties identical to those in the instant case. But Plaintiff Kastl never served either Defendant Shanks or Hofer. The question, then, is whether he has a case identical to the instant case "pending," thereby requiring the dismissal or stay of this case. The court determines that he does not.

Since the briefing of Defendants' motion to dismiss, Judge Lungstrum has dismissed Plaintiff Kastl's complaint in Case No. 02–2135–JWL without prejudice. No ruling was made on the merits of the case. Plaintiff Kastl now has no other case pending, and the court will consider his claims in the instant case.

Defendants also argue that Plaintiff Kastl "acquiesced" to the proposition that none of his federal rights had been violated because he did not respond to the motion to dismiss by officers Crouse and Hadl in Case No. 02–2135–JWL. The court disagrees. At most, it may indicate an acquiescence regarding the claims against officers Crouse and Hadl. It does not, however, follow that Plaintiff Kastl has conceded that none of his claims have merit.

### B. Qualified Immunity

■ Defendants next argue that qualified immunity protects them from Plaintiffs' suit. Qualified immunity shields an individual government official performing discretionary functions from liability for civil damages insofar as his or her conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818, 102 S.Ct. 2727; *Butler v. City of Prairie Village*, 172 F.3d 736, 745 (10th Cir.1999). To determine whether a government official is entitled to qualified immunity, the court first must decide whether the plaintiff has " 'asserted a violation of a constitutional right at all.' " *Moore v. City of Wynnewood*, 57 F.3d 924, 931 (10th Cir.1995) (quoting *Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991)). If the plaintiff has made a valid claim, then the court must evaluate whether the asserted right was clearly established such that a reasonable person in the official's position would have

known that his or her conduct violated that right. *Id.; Merkel v. Leavenworth County Emergency Med. Servs.,* No. 98–2335–JWL, 2000 WL 127266, at *10 (D.Kan. Jan.4, 2000). When qualified immunity is raised in response to a motion to dismiss, the court does not apply a heightened pleading standard. *Currier v. Doran,* 242 F.3d 905, 911–917 (10th Cir.2001).

At this stage of the litigation, Defendants have not challenged whether any of the rights Plaintiffs allege were violated were "clearly established." For the purposes of this Memorandum and Order, the court assumes that all rights were clearly established. The court only considers whether Plaintiffs have alleged the violation of constitutional rights at all.

### 1. Claims Arising Out of the July 13, 2002 Incident

#### a. Count I

In Count I, Plaintiffs allege that Defendants Shanks and Hofer retaliated against them for exercising their First Amendment rights. Defendants argue that Plaintiffs' allegations are conclusory. The court disagrees.

■■■■ "[T]he First Amendment bars retaliation for protected speech." *Crawford–El v. Britton,* 523 U.S. 574, 592, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998). "[A]ny form of official retaliation for exercising one's freedom of speech, including prosecution, threatened prosecution, bad faith investigation, and legal harassment, constitutes an infringement of that freedom." *Worrell v. Henry,* 219 F.3d 1197, 1212 (10th Cir.2000) (citation and internal quotation marks omitted). When the alleged infringer is not the plaintiff's employer or a party to a contract with the plaintiff, the court looks to the following factors:

(1) that the plaintiff "was engaged in constitutionally protected activity"; (2) that the defendant's actions caused the plaintiff "to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity"; and (3) that the "defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct."

*Id.* at 1212 (citation omitted).

■■■■ Plaintiffs allege in their complaint that (1) "Plaintiff McCormick began recording with said digital camcorder and protesting the said traffic stop being conducted by said Hofer"; (2) "Plaintiff began verbally criticizing and heckling said Shanks"; (3) "Mik Shanks and Scott Hofer ... retaliated against plaintiffs' making of protected, pure political speech from a public sidewalk, to wit: criticizing the government and protesting police activity ... and plaintiffs' filming of the incident"; (4) Plaintiff Kastl was "stand[ing] on the sidewalk in solidarity with plaintiff McCormick" and "recording the incident"; (5) Plaintiffs had a "journalistic purpose of taking documentary film and otherwise making a record of the incident"; and (6) Plaintiff McCormick was trying to "express plaintiff's strong disapproval of an officer with whom plaintiff already had a 'run in' and knew therefrom was an agent of oppression and transgressor of the Constitution."

The court concludes that these allegations are not conclusory and are sufficient to state a claim against Defendants Shanks and Hofer. Defendants have not specifically stated how they contend that Plaintiffs were not engaged in constitutionally protected activity; they have just generally argued that Plaintiffs' allegations are conclusory. *Criticism of public officials is*

protected by the First Amendment. *New York Times Co. v. Sullivan,* 376 U.S. 254, 273, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). Based on the allegations in Plaintiffs' complaint, Plaintiffs have satisfied the first element of *Worrell v. Henry.*

Under *Worrell,* Plaintiffs must next allege that the officers' actions caused them "to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity." 219 F.3d at 1212. Plaintiffs allege that the officers were engaging in the following activities: "threatening plaintiffs with arrest, physically attacking plaintiffs, maliciously inflicting pain upon plaintiffs, physically seizing and kidnapping [sic] plaintiffs, taking, by force, plaintiffs' audio and video recording devices, taking plaintiffs to jail and charging plaintiffs with 'obstruction of justice' for making such expressions." The court concludes that these allegations are not conclusory, and, if taken as true, fulfill the second *Worrell* element.

Finally, Plaintiffs must allege that Defendants' retaliatory acts were "substantially motivated" by Plaintiffs' exercise of protected conduct. Plaintiffs allege that Defendants Shanks and Hofer took the above-referenced actions immediately after Plaintiffs made political speech from a public sidewalk. Drawing all reasonable inferences in favor of Plaintiffs, the allegations in the complaint satisfy the last *Worrell* element.

In sum, the court determines that Plaintiffs' allegations are not conclusory and are sufficient to satisfy the *Worrell* test. The court denies Defendants' motion to dismiss Count I.

### b. Count II

In Count II, Plaintiffs allege that the actions Defendants Shanks and Hofer took against them on July 13, 2002, constituted a "prior restraint" in violation of the First Amendment. Defendants argue that Plaintiffs have made conclusory allegations that they were engaged in constitutionally protected speech and that the actions of Defendants Shanks and Hofer did not constitute a "prior restraint." The court rejects Defendants' first argument on the same basis as Count I. The court rejects Defendants' second argument at this time because it appears that an arrest may constitute a "prior restraint" in some circumstances. *See SOB, Inc. v. County of Benton,* 317 F.3d 856, 866 (8th Cir.2003); *United States v. Moore,* 215 F.3d 681, 685 (7th Cir.2000); *McCormick v. City of Lawrence,* 253 F.Supp.2d 1172, 1198 (D.Kan. 2003). The court declines to address the claim further at this stage in the litigation. Plaintiffs have alleged sufficient facts to state a claim, and the court denies Defendants' motion to dismiss Count II.

### c. Count III

Plaintiffs bring a "content discrimination" claim in Count III, alleging that Defendants impermissibly discriminated against them based on their viewpoints and/or the content of their speech. Defendants argue that this claim is simply a restatement of Count II and therefore fails for the same reasons Count II fails. Count III does not appear to the court to be duplicative of Count II. To prevail on Count II, Plaintiffs must demonstrate that Defendants' actions preemptively denied Plaintiffs the right to engage in protected expression. *Ward v. Rock Against Racism,* 491 U.S. 781, 795 n. 5, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989) (citation omitted). Count III does not involve the same requirement. The court denies Defendants' motion to dismiss on this basis.

### d. Count IV

In Count IV, Plaintiffs claim that Defendants Shanks and Hofer seized them in

violation of the Fourth Amendment by arresting them without probable cause. Defendants claim that Plaintiffs' factual allegations belie their claim that they were arrested without probable cause. Again, the court disagrees.

"Unconstitutional arrests are unreasonable seizures of the person that violate the Fourth and Fourteenth Amendments." *Rose v. Mitchell*, 443 U.S. 545, 577, 99 S.Ct. 2993, 61 L.Ed.2d 739 (1979). Whether the arrest, as a warrantless arrest, amounts to an unreasonable seizure, and thus a constitutional violation, turns on whether there was probable cause to believe that the plaintiff had committed a crime. *Thompson v. City of Lawrence*, 58 F.3d 1511, 1515 (10th Cir.1995). "Under a § 1983 claim of unlawful arrest, [d]efendant police officers lose their shield of qualified immunity only if they could not have believed that [the plaintiff's] arrest was based on probable cause." *Id.* (citation omitted). The critical inquiry is not whether the plaintiff actually committed the crime at issue, but whether the police had probable cause to believe that he did.

Defendants contend that they had probable cause to believe Plaintiffs were violating K.S.A. § 21–3808(a) at the time of their arrest. That statute makes it illegal to obstruct legal process or official duty:

> Obstructing legal process or official duty is knowingly and intentionally obstructing, resisting or opposing any person authorized by law to serve process in the service or execution or in the attempt to serve or execute any writ, warrant, process or order of a court, or in the discharge of any official duty.

In Case No. 02–2135–JWL, Judge Lungstrum analyzed what conduct might violate the statute. *McCormick*, 253 F.Supp.2d at 1195–96. Judge Lungstrum examined *State v. Parker*, 236 Kan. 353, 690 P.2d 1353 (1984), a Kansas Supreme Court case that held that the use of force was not necessary to violate K.S.A. § 21–3808(a). *Id.* at 1195 (quoting 690 P.2d at 1359). He also noted that the Kansas Court of Appeals has explicitly stated that the statute applies to oral arguments. *Id.* (citing *State v. Latimer*, 9 Kan.App.2d 728, 687 P.2d 648, 653 (1984)). He concluded that under Kansas law, "obstruction of legal process or official duty requires conduct that 'must have substantially hindered or increased the burden of the officer in carrying out his official duty.'" *Id.* (quoting *Parker*, 690 P.2d at 1362).

Plaintiffs have not alleged facts compelling the conclusion that Defendants Shanks and Hofer had probable cause to arrest them. To the contrary, Plaintiffs have alleged facts suggesting that Plaintiffs were not interfering with the traffic stop when Defendant Shanks threatened to arrest them and "rushed" at them and attacked them. According to Plaintiffs, they were merely protesting and recording the stop from public property. At this stage of the litigation, the court cannot conclude as a matter of law that the allegations of Plaintiffs' complaint show that Defendants had probable cause to arrest Plaintiffs for violation of K.S.A. § 21–3808. Defendants' motion to dismiss is denied as to Count IV.

### e. Count V

Count V is an excessive force claim by Plaintiff McCormick against Defendants Shanks and Hofer. Defendants argue that they are entitled to qualified immunity because physical touching is necessary in any arrest, and under the cir-

cumstances as described in the complaint, their actions were reasonable. The court is not persuaded by Defendants' argument.

Plaintiff McCormick has alleged that Defendant Shanks took the following acts and that Defendant Hofer failed to intervene in such acts:

> Shanks on several occasions maliciously and deliberately inflicted excruciating pain upon plaintiff, specifically driving his knee or some other part of his body into plaintiff's back repeatedly while plaintiff was face-down, handcuffed and helpless on the ground.... Shanks then took plaintiff to the trunk of Shanks' patrol car, bent plaintiff over such trunk, then began wrenching down on the inward facing portion of the handcuffs on plaintiff's wrists, in a manner that was rude, aggressive and violent, and all in a deliberate effort to inflict bodily injury to plaintiff. Shanks continued thrusting his massive, clinically obese bulk downward upon such handcuffs for approximately thirty seconds while plaintiff was literally screaming at the top of his lungs in agony....

Based on these facts, the court concludes that Plaintiff McCormick has stated a cause of action for excessive force. Defendants' motion is denied on this basis.

#### f. Count VI

██ Count VI claims that Defendants Shanks and Hofer seized Plaintiffs' audio and video recording devices without probable cause to believe that they were contraband or evidence of a crime. Defendants ask the court to dismiss the claim because either Plaintiffs lack standing to bring it or the officers were within the law in seizing Plaintiffs' property.

Plaintiffs allege in their complaint that the recording devices were purchased by them on behalf of themselves and shadowave.org. Defendants ask the court to infer that Plaintiffs are "manufacturing facts" to avoid standing issues because in Case No. 02–2135–JWL, Plaintiffs alleged that the devices were the property of fourthamendment.org.

At this stage of the litigation, the court declines to dismiss Count VI for lack of standing. Plaintiffs will be expected to demonstrate at a later date that they had an interest in the recording devices, but not in response to a motion to dismiss. Accepting the allegations in the complaint as true, it appears to the court that Plaintiffs have standing to bring this claim.

The court also rejects Defendants' argument that the seizure was lawful based on the allegations in Plaintiffs' complaint for the same reasons stated with respect to Count IV. Defendants' motion is denied as to Count VI.

#### g. Count VII

██ In Count VII, Plaintiffs allege that Defendants Shanks and Hofer unreasonably searched their persons in connection with their arrest. Defendants move to dismiss the claim on two bases: (1) Count VII is a legal conclusion, and/or (2) police officers may search a person and his effects incident to a lawful arrest.

The court disagrees that Count VII states a legal conclusion. As with all of Plaintiffs' allegations, Plaintiffs allege specific and numerous facts in support of their claim. With regard to Defendants' second argument, the court has already determined that Plaintiffs have sufficiently alleged that their arrest was unlawful. The court denies Defendants' motion with respect to Count VII.

#### h. Counts XIII and XIV

In Counts XIII and XIV, Plaintiffs allege in part that Defendant Shanks swore

two probable cause affidavits, knowing that they did not support probable cause, thereby causing Plaintiffs to be unreasonably seized through the resulting involvement in court proceedings. Count XIII alleges a Fourth Amendment violation. Count XIV alleges in part that the affidavits were in retaliation for Plaintiffs' exercise of their First Amendment rights. Defendant Shanks contends that these claims are merely a continuance of the seizure beginning with Plaintiffs' arrests, and are therefore duplicative of Counts I and IV.

While these claims may be subject to dismissal at a later time, Defendant Shanks has not yet provided the court with a valid reason upon which to dismiss the claims. The court questions whether a Fourth Amendment cause of action lies in a "continuing" seizure and whether multiple claims of retaliation can arise from one instance of protected conduct. Defendant Shanks has not briefed either issue, however, and the court is not prepared to rule in his favor at this time.

### 2. Claim Arising Out of the June 28, 2002 Incident—Count XII

Count XII is a First Amendment retaliation claim against Defendant Fultz for his threat to arrest Plaintiff McCormick on June 28, 2002. Defendant Fultz claims that the "transcript" provided by Plaintiff McCormick of their conversation (reprinted in the Statement of Facts in this Memorandum and Order) establishes that he threatened to arrest Plaintiff McCormick for obstructing an investigation, not for his speech. The court finds the exchange ambiguous, and denies the motion to dismiss Count XII. While Defendant Fultz did advise Plaintiff McCormick that he would be arrested if he "impede[d] the investigation," he also told Plaintiff

McCormick that he could not say anything to the officers. Reading the transcript in the light most favorable to Plaintiff McCormick, the court determines that Defendant Fultz's statement could imply that Plaintiff would be arrested if he spoke to the officers conducting the sobriety checkpoint, regardless of whether the speech impeded their investigation. Defendants' motion to dismiss is denied with respect to Count XII.

### 3. Illegal Searches of Personal Property—Counts VIII–XI

Plaintiffs allege in Counts VIII through XI that various Defendants unreasonably searched Plaintiffs' camcorder, video tape, micro-cassette recorder, and micro-cassette tape in violation of the Fourth Amendment. Defendants argue that Plaintiffs had no reasonable expectation of privacy in the property because the recordings were made while Plaintiffs were publicly protesting police activity in a public forum. The court agrees.

Fourth Amendment protection is only available when an individual has a "legitimate expectation of privacy" in an item. *Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). Where there is no legitimate expectation of privacy, there can be no "search" within the meaning of the Fourth Amendment. *Illinois v. Andreas*, 463 U.S. 765, 771, 103 S.Ct. 3319, 77 L.Ed.2d 1003 (1983) (citation omitted). When an item has been exposed to the public, courts have refused to recognize a legitimate expectation of privacy. *See, e.g., California v. Greenwood*, 486 U.S. 35, 39–40, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988); *California v. Ciraolo*, 476 U.S. 207, 211–14, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986).

Defendants cite *United States v. Whitten*, 706 F.2d 1000 (9th Cir.1983), in sup-

port of their position that Plaintiffs had no legitimate expectation of privacy in the recording equipment. In *Whitten,* police officers were in a house when the phone rang and the answering machine picked up. 706 F.2d at 1011. The speaker was on and everyone present in the room could hear the incoming call. *Id.* The court held that the plaintiffs had no legitimate expectation of privacy in the contents of the call. *Id.*

*Whitten* has been cited by two courts to support a finding that a plaintiff had no legitimate expectation of privacy in a video tape recording of a public event or place. In *Rice v. Gercar,* 77 F.3d 483, 1996 WL 67907 (6th Cir. Feb.15, 1996), an unpublished opinion, the court held that the plaintiffs did not have a legitimate expectation of privacy in the contents of a video tape, "to the extent that the videotape documented events that occurred in a public place and in the presence of the viewing officer." 1996 WL 67907, at *4. In *Berglund v. City of Maplewood,* 173 F.Supp.2d 935 (D.Minn.2001), the court held that the plaintiffs did not have a legitimate expectation of privacy in a video tape "because the tape documented events that occurred in a public place and in the presence of the viewing officer." 173 F.Supp.2d at 944.

Plaintiffs provide the court with several hypotheticals allegedly demonstrating why they have a legitimate expectation of privacy in the recording equipment. But Plaintiffs have not directed the court to caselaw supporting their position, and the court's research has not revealed any. Based on the rationale in *Whitten, Rice,* and *Berglund,* the court concludes that Plaintiffs did not have a legitimate expectation of privacy in the contents of the video and audio tapes. Absent such an expectation, they have not stated a claim

under the Fourth Amendment. The court grants Defendants' motion with respect to Counts VIII through XI.

### C. Municipal Liability— Counts XV and XVI

Counts XV and XVI are claims for monetary and injunctive relief from the City of Lawrence for its allegedly unconstitutional practices or customs. In their original brief, Defendants simply move to dismiss the claims "for the reasons[s] that the remainder of plaintiffs' claims fail" and because Plaintiffs are barred from obtaining injunctive relief under *City of Los Angeles v. Lyons,* 461 U.S. 95, 101–02, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). In their reply brief, they also argue that a single incident is insufficient to establish a plan or policy and that res judicata bars Plaintiffs' claims. Plaintiffs counter that because their other claims are cognizable, their claims against the City are valid, and that they have alleged a "persistent pattern of police misconduct," distinguishing their case from *Lyons.* The court agrees.

■■■■ A municipality may only be held liable for a § 1983 claim if it has established a policy or custom which causes the alleged injury. *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A qualifying policy must be a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* A qualifying custom must be "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 168, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Someone with "final policy making authority" in the municipality must have established the policy or custom.

■■■ Because the court has not dismissed the majority of Plaintiffs' claims against individual police officers, Defen-

dants' first argument fails. Furthermore, Plaintiffs have alleged that Defendant City has a pattern or practice of retaliating against those who criticize police activity. They have alleged that the police department has repeatedly taken retaliatory actions against them, contrary to Defendants' representation that Plaintiffs refer to a single incident. The court determines that Plaintiffs' allegations are sufficient to state a claim.

 Finally, Defendants' res judicata argument has no merit. Defendants claim that the court in Case No. 02–2135–JWL denied Plaintiff McCormick leave to amend his complaint to add a claim for injunctive relief, thereby constituting a dismissal on the merits. After review of the order denying leave to amend, this court concludes that the order did not constitute a ruling on the merits. To the contrary, Plaintiff McCormick was denied leave to amend because his request was untimely. Res judicata does not act to bar his claim for injunctive relief in this case. The court denies Defendants' motion to dismiss Counts XV and XVI.

In sum, the court determines that Plaintiffs' complaint effectively states a claim for relief in Counts I through VII and XII through XVI. Counts VIII through XI are dismissed.

IT IS, THEREFORE, BY THE COURT ORDERED that Defendants' motion to dismiss (Doc. 12) is denied in part and granted in part. Counts VIII through XI are dismissed. The rest of Plaintiffs' claims remain in the case.

Copies or notice of this order shall be transmitted to counsel of record and *pro se* Plaintiffs.

**IT IS SO ORDERED.**