# FOR PUBLICATION



**FILED**

Oct 28 2014, 9:19 am

**CLERK**

of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**LENEIGHA S. DOWNS**
Monroe County Public Defender's Office
Bloomington, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**IAN MCLEAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| PAUL ALLEN DECKER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 53A01-1402-CR-90 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MONROE CIRCUIT COURT
The Honorable Marc R. Kellams, Judge
Cause No. 53C02-1212-FA-1176

**October 28, 2014**

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

Paul Allen Decker appeals the trial court's denial of his motion to suppress. Decker raises three issues which we consolidate and restate as whether the trial court erred in denying his motion to suppress. On cross-appeal, the State raises the issue of whether this court should vacate its grant of Decker's motion to accept jurisdiction. We affirm.

FACTS AND PROCEDURAL HISTORY

On December 3, 2012, Bloomington Police Detective Brandon LaPossa was advised by his sergeant that the library had called and said a male was looking at child pornography. Detective LaPossa went to the library and met with Dana Geldof, a security guard at the library. Geldof informed Detective LaPossa that there was a male looking at pictures of child pornography. Geldof identified computer number thirty-four as the computer where the person was sitting. At this point, Decker was sitting at a table just across from the computer.

Geldof stated that when she approached the computer there was a "large image of a child laying on a bed with his penis visible," that Decker was clicking the icons and closing some of the images, and that she asked Decker to quit closing them and step away from the computer. Transcript at 17. Geldof also told Detective LaPossa that she asked Decker if he often viewed kiddie porn at the library, and Decker said that he did. Geldof indicated that she was contacted by two of the library staff, Elizabeth Gray and James Gossman. Detective LaPossa asked Geldof to write out a sworn statement.

Detective LaPossa then spoke with Gray who told him that she was approached by Gossman and asked to walk by computer number thirty-four, and that when she walked

2

by she saw many images of children and she stated that she "felt very uncomfortable and . . . was disturbed by the photos that she looked at." Id. She also stated that the kids were nude or partially clothed in the pictures and that the photos were "not family-type photos." Id. Detective LaPossa asked Gray to make a written statement, and then spoke with Gossman. Gossman stated that he was walking by and saw at least one picture of a small naked child and he told Gray to walk by and take a look. Detective LaPossa asked Gossman to write out a sworn statement.

Detective LaPossa looked at the computer screen and observed several images of different aged children in diapers posed in different positions, some of which Detective LaPossa thought were sexual positions, and that there were "at least probably thirty" images. Id. at 13. He estimated that the children he saw were "anywhere from an infant to approximately twelve years old." Id. at 19.

After speaking with Geldof, Gossman, and Gray, and looking at the computer, Detective LaPossa handcuffed Decker, arrested him, informed him that he was detained and that they were going to the police department, and removed a thumb drive from the computer.

At the police station, Detective LaPossa read Decker his Miranda rights, Decker indicated that he understood them, and signed a waiver form explaining his Miranda rights. Decker stated that he regularly went to the library and visited a specific website where he would download pictures of children in diapers and nude children and take them back to his house. He also stated that he views them for sexual enticement and masturbates to the photos. He stated that he searched for boys wearing diapers. He also

3

provided information regarding acts of child molesting. At some point, Detective LaPossa requested search warrants for Decker's residence, the computer at the library, and the thumb drive.

On December 19, 2012, the State charged Decker with two counts of child molesting as class A felonies, four counts of child molesting as class C felonies, performing sexual conduct in the presence of a minor as a class D felony, and possession of child pornography as a class D felony. On February 12, 2013, Decker filed a motion to dismiss the charge of possession of child pornography. On June 28, 2013, he filed a motion to suppress the electronic thumb drive, his computer, and his statements made at the time of and subsequent to his arrest. He alleged that the police officers arrested him on December 3, 2012, without lawful authority and that the warrant obtained to search his home was based upon information obtained from his unlawful arrest and unlawful seizure of his personal property. On April 17, 2013, Decker filed an amended motion to dismiss.[1]

On August 20, 2013, the court held a hearing on Decker's motions and took them under advisement. The court admitted some photos as defense exhibits, and when asked whether one of the photos was on the computer at the library, Detective LaPossa initially testified that he could not specify because there were so many pictures on the library computer and later testified that he believed that the photo was from the thumb drive.

With respect to the motion to dismiss, Decker's counsel argued:

---

[1] The record does not contain a copy of the motion to dismiss filed on February 12, 2013, or the amended motion to dismiss filed on April 17, 2013.

4

[T]hese pictures don't even rise to the level of what the Indiana statute requires and if you think they do, then that statute is unconstitutionally vague because that would make every one of us who takes pictures of our kids taking a bath or everything else child pornographers, so it should be dismissed on that alone. Second, the other basis for the motion to dismiss is that the child pornography charge doesn't even describe the photographs that are alleged to be pornography within the charge.

Id. at 102-103.

On January 9, 2014, the trial court entered an order granting Decker's motion to dismiss the charge of possession of child pornography and denied Decker's motion to suppress. The court's order states in part:

## STATEMENT OF FACTS

On December 3, 2012, Detective Brandon LaPossa of the Bloomington Police Department responded to a call that "someone was being detained by Monroe County Public Library Staff because they believed he was looking at child pornography." (Def.'s Memorandum 1.) Upon arriving at the library, Detective LaPossa spoke with the library staff. (*Id.* at 3.) Ms. [Geldof], a security guard at the library, told Detective LaPossa that when she approached [Decker], who was using a library computer, she saw an image of [a] naked boy between the age of four and six years old. (*Id.* at 1.) Ms. [Geldof] also stated that [Decker] was in the process of quickly closing multiple screens on the computer as she approached him. (*Id.* at 4.) In addition, two other witnesses described the images on the screen as pornographic, and [Decker] admitted to coming to the library to view child porn. (*Id.* at 2.) One of the witnesses told Detective LaPossa that the images were not "family type" photos and that the pictures were "disturbing." (*Id.*) Detective LaPossa questioned [Decker] to obtain his identification and called for back up. [Decker] was arrested and taken to the Bloomington Police Department. After being Mirandized and while being interviewed, [Decker] confessed to other crimes unrelated to his arrest. (State's Response 5.) Warrants were obtained to search [Decker's] home, home computer, and thumb drive, and illegal content was discovered. (Def.'s Memorandum 5.) [Decker] was subsequently charged with multiple counts of child molesting as well as performing sexual conduct in the presence of a minor and possession of child pornography.

5

## DISCUSSION

**1.      The Police Had the Requisite Probable Cause to Lawfully Arrest the Defendant Without a Warrant.**

As a general rule, the Fourth Amendment prohibits unreasonable warrantless searches and seizures. U.S. Const. amend. IV. The Supreme Court has explained that "the line is crossed when the police, without probable cause or a warrant, forcibly remove a person from his home or other place in which he is entitled to be and transport him to the police station, where he is detained, although briefly, for investigative purposes." *Hayes v. Florida*, 470 U.S. 811, 816 (1985). The Supreme Court, however, has held that "the warrantless arrest of an individual in a public place upon probable cause [does] not violate the Fourth Amendment." *United States v. Santana*, 427 U.S. 38, 42 (1976) (citing *United States v. Watson*, 423 U.S. 411 (1976)).

Probable cause is a flexible standard that does not depend on how the police characterize their activity. The Supreme Court has held that "probable cause is a fluid concept – turning on the assessment of probabilities in particular factual contexts. . . ." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). In addition, the Indiana Supreme Court has stated that "a police officer may describe a situation as being one of investigation or suspicion, or he may state that he did or did not believe that he had probable cause. However, this subjective evaluation is not determinative of the issue." *Taylor v. State*, 406 N.E.2d 247, 249 (Ind. 1980). Indiana courts have held that "[p]robable cause is said to exist when, at the time of an arrest, the arresting officer has knowledge of facts and circumstances which would warrant a reasonably cautious and prudent man to believe the suspect committed the criminal act in question." *State v. Blake*, 468 N.E.2d 548, 550 (Ind. Ct. App. 1984) (citing *Craig v. State*, 452 N.E.2d 921, 923 (Ind. 1983)).

Information received from witnesses can serve as the basis for probable cause to arrest an individual. "'When an officer has received information from some person – normally the putative victim or an eyewitness – who it seems reasonable to believe is telling the truth, he has probable cause' to arrest the accused perpetrator." *Jenkins v. Keating*, 147 F.3d 577, 585 (7th Cir. 1998) (quoting *Gramenos v. Jewel* [*Companies, Inc.*], 797 F.2d 432, 439 (7th Cir. 1986)[, <u>cert.</u> <u>denied</u>, 481 U.S. 1028, 107 S. Ct. 1952 (1987)]). Another factor that is frequently used to establish probable cause is the defendant's behavior when he is confronted prior to being arrested. *See Sweeney v. State*, 704 N.E.2d 86, 107 (Ind. 1998)[, <u>cert.</u> <u>denied</u>, 527 U.S. 1035, 119 S. Ct. 2393 (1999)]; *Lark v. State*, 759 N.E.2d

6

275, 275 (Ind. Ct. App. 2001) (holding nervous behavior to be a factor in favor of finding probable cause).

An arresting officer must reasonably believe that viewed materials constitute child pornography to have probable cause to arrest. However, the fact that such viewed materials do not constitute child pornography within the meaning of the statute does invalidate the arresting officer's probable cause to arrest.[2] The Seventh Circuit has held that "an officer's on-the-spot probable cause determination does not require a precise legalistic assessment of the [material] and application of the relevant case law." *U.S. v. Moore*, 215 F.3d 681, 687 (7th Cir. 2000)[, cert. denied, 531 U.S. 915, 121 S. Ct. 271 (2000)]. Courts have also recognized that "police officers need not be legal scholars, and therefore the arresting officer's knowledge of the facts sufficient to support probable cause is more important to the evaluation of the propriety of an arrest than the officer's understanding of the legal basis for the arrest." *U.S. v. Reed*, 349 F.3d 457, 462 (7th Cir. 2003). In *U.S. v. Moore*, the court determined that an officer had probable cause to arrest for possession of child pornography based on the three photographs that the officer had seen. 215 F.3d at 687. The arresting officer testified that he considered the three photographs to be . . . "something that . . . would disturb someone . . . [something that] the normal person would view to be unacceptable." *Id.* While the photographs depicted young naked boys and girls, the court has determined that the photographs did not depict sexual conduct and that these photographs were not child pornography as defined by Indiana law. *Id.* Nevertheless, the court holds that these photographs gave the officer probable cause to arrest the suspect. *Id.*

Detective LaPossa had probable cause sufficient to arrest [Decker] at the Monroe County Public Library. Detective LaPossa relied on the accounts of three eye witnesses in determining that he believed that [Decker] had committed the crime of possession of child pornography. Although this court has dismissed the possession of child pornography count after finding that the pictures recovered by the State from the library computer do not constitute child pornography, these pictures are similar to the ones described in *Moore*. In addition, [Decker] quickly closed windows when approached by one of the witness. [sic] This evasive behavior is similar to the nervousness factor used to find probable cause in that both indicate a guilty conscience. This evasive behavior, the pictures, and the testimony from three eye witnesses were enough for Detective LaPossa to

---

[2] Given the context, it appears that a scrivener's error occurred and that the court intended to state that the fact that such viewed materials do not constitute child pornography within the meaning of the statute does *not* invalidate the arresting officer's probable cause to arrest.

reasonably believe that [Decker] had committed the crime of possession of child pornography. The arrest was therefore based on probable cause and was valid.

Appellant's Appendix at 67-71.

On January 22, 2014, Decker filed a motion to certify the interlocutory order for appeal. On January 27, 2014, the trial court entered an order certifying the January 9, 2014 order for interlocutory appeal. On February 25, 2014, Decker filed a motion to accept jurisdiction of the interlocutory appeal. On March 28, 2014, this court granted Decker's motion to accept jurisdiction of the interlocutory appeal. On April 1, 2014, Decker filed a notice of appeal.

DISCUSSION

We first address the State's cross-appeal issue. The issue is whether this court should vacate its grant of Decker's motion to accept jurisdiction. The State argues that Decker's appeal asks only for a temporary ruling from this court which cannot, in any event, produce the suppression of his statement. The State asserts that pretrial rulings do not determine the ultimate admissibility of the evidence. It contends that the trial court's finding and order examined only the issue of whether Decker's arrest was supported by probable cause and did not address the admissibility of Decker's statements under the second prong of Brown v. Illinois, 422 U.S. 590 (1975), and Wong Sun v. United States, 371 U.S. 471 (1963). It asserts that this court should reconsider its grant of Decker's motion to accept interlocutory jurisdiction and dismiss the appeal.

Decker contends that this court should not vacate its jurisdiction over his appeal. He argues that his memorandum of law in support of his motion to suppress included a

8

discussion of how the <u>Miranda</u> warnings did not cleanse the taint of the unlawful arrest, and the State also addressed this <u>Miranda</u> issue in its response to his motion to suppress. He asserts that the trial court did not rule upon this issue or include a further <u>Miranda</u> analysis in its order "most likely because the trial court erroneously found that Decker's arrest was supported by probable cause and thus believed that it need not address the *Miranda* issue." Appellant's Reply Brief at 3.

Ind. Appellate Rule 14(B) governs discretionary interlocutory appeals. "An appeal may be taken from . . . interlocutory orders if the trial court certifies its order and the Court of Appeals accepts jurisdiction over the appeal." Ind. Appellate Rule 14(B). "The rule provides for a two-step process to initiate a discretionary interlocutory appeal: first the trial court must certify its order for interlocutory appeal; then, if the trial court does so, this court may accept interlocutory jurisdiction over the case." <u>Wise v. State</u>, 997 N.E.2d 411, 413 (Ind. Ct. App. 2013). Ind. Appellate Rule 14(B)(1) sets forth the process involved in certifying a trial court's order for interlocutory appeal. The rule also states that grounds for granting an interlocutory appeal include:

(i)     The appellant will suffer substantial expense, damage or injury if the order is erroneous and the determination of the error is withheld until after judgment.

(ii)    The order involves a substantial question of law, the early determination of which will promote a more orderly disposition of the case.

(iii)   The remedy by appeal is otherwise inadequate.

9

Ind. Appellate Rule 14(B)(1)(c). "If the trial court certifies an order for interlocutory appeal, the Court of Appeals, in its discretion, upon motion by a party, may accept jurisdiction of the appeal." Ind. Appellate Rule 14(B)(2).

We observe that Decker's memorandum of law in support of his motion to suppress argued that the <u>Miranda</u> warnings read to him did not eliminate the taint of unlawful arrest and cited <u>Brown</u> and <u>Wong Sun</u>. In its response to Decker's motion to suppress, the State cited <u>Brown</u> and argued that, even if Detective LaPossa lacked probable cause, Decker's statements need not be suppressed if they are acts of free will unaffected by the initial illegality. Thus, these arguments were before the trial court and it merely found that Detective LaPossa had probable cause to arrest Decker. Under the circumstances, we cannot say that the grounds for granting the interlocutory appeal or this court's previous acceptance of the interlocutory appeal were improper.

We next turn to whether the trial court erred in denying Decker's motion to suppress. Decker appears to assert that his arrest was unlawful because Detective LaPossa did not have probable cause and any evidence obtained from the arrest should be suppressed under the Fourth Amendment.[3] He argues that the trial court "seized upon a quotation from *Moore* that 'an officer's on-the-spot probable cause determination does not require a precise legalistic assessment of the [allegedly pornographic material] and application of the relevant case law' because police officers 'need not be legal scholars'

---

[3] In his brief, Decker mentions both the Fourth Amendment and Article 1, Section 11 of the Indiana Constitution. However, he fails to provide an independent analysis of the Indiana Constitution. Failure to make a cogent argument under the Indiana Constitution constitutes waiver of the issue on appeal. See <u>Abel v. State</u>, 773 N.E.2d 276, 278 n.1 (Ind. 2002) (holding that because the defendant presented no authority or independent analysis supporting a separate standard under the state constitution, any state constitutional claim is waived).

10

to support its decision that probable cause existed for Decker's arrest." Appellant's Brief at 15-16. He contends that the quotation from <u>Moore</u> does not stand for the proposition that an officer need know nothing of the elements of a given crime to then make a warrantless arrest for that crime, and that, at the time of his arrest, "the only non-conclusory information [Detective LaPossa] had was that [he] was looking at photos of diapered, nude, and partially nude children in the library and Decker's identity." <u>Id.</u> at 16. He asserts that Detective LaPossa did not attempt to learn anything about the images from the library staff or Decker that would have helped him to determine if there was any sexual conduct depicted in the images or whether the images might have displayed uncovered genitalia in a manner prohibited by Indiana law. He also contends that mere nudity or a bare legal assertion, absent any descriptive support, does not indicate whether the materials are even probably pornographic.

Decker also posits that interpreting the information at the library to establish probable cause to arrest for possession of child pornography would create a serious problem for families everywhere because many people have family photos that include children who are nude or semi-nude in the bathtub or any number of other locations. He argues that "[h]aving these types of photos cannot be a basis for probable cause for immediate arrest, or every first-time parent eager to document every moment of their child's life could be arrested at any time for the photos . . . on their phone or camera." <u>Id.</u> at 18.

The State argues that the facts are more than sufficient to justify a reasonable person to believe that Decker committed the offense of possessing child pornography,

11

and that Decker's suggestion that Detective LaPossa was unaware of what the employees had seen is contradicted by the fact that he interviewed the employees before arresting Decker. The State also contends that the trial court did not enlarge the definition of child pornography to threaten parents who photograph their children, or artists and scientific researchers who may produce or possess images of children's genitals because the statute criminalizes the possession of photographs displaying children's genitals *if* it is committed with the intent to arouse or satisfy the sexual desires of any person and the image lacks serious literary, artistic, political, or scientific value.

"We review a trial court's denial of a defendant's motion to suppress deferentially, construing conflicting evidence in the light most favorable to the ruling, but we will also consider any substantial and uncontested evidence favorable to the defendant." Robinson v. State, 5 N.E.3d 362, 365 (Ind. 2014). "We defer to the trial court's findings of fact unless they are clearly erroneous, and we will not reweigh the evidence." Id.

> The Fourth Amendment guarantees that:
>
> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV. Encounters between law enforcement officers and public citizens take a variety of forms, some of which do not implicate the protections of the Fourth Amendment and some of which do. Clark v. State, 994 N.E.2d 252, 261 (Ind. 2013). Consensual encounters in which a citizen voluntarily interacts with an officer do not compel Fourth Amendment analysis. Id. Nonconsensual encounters do, though, and

typically are viewed in two levels of detention: a full arrest lasting longer than a short period of time, or a brief investigative stop. Id. The former of these requires probable cause to be permissible; the latter requires a lower standard of reasonable suspicion. Id.

Probable cause to arrest exists when, at the time of the arrest, the officer has knowledge of facts and circumstances that would warrant a reasonable person to believe that the suspect has committed the criminal act in question. Clark v. State, 808 N.E.2d 1183, 1192 (Ind. 2004). The amount of evidence necessary to meet the probable cause requirement is determined on a case-by-case basis. Id. It is grounded in notions of common sense, not mathematical precision. Id. The evidence required to establish guilt is not necessary for probable cause for an arrest to exist. Roberts v. State, 599 N.E.2d 595, 598 (Ind. 1992), reh'g denied. "In addition, because the situations that officers face 'in the course of executing their duties are more or less ambiguous,' probable cause allows for reasonable mistakes by the officer." United States v. Moore, 215 F.3d 681, 686 (7th Cir. 2000) (quoting Gerstein v. Pugh, 420 U.S. 103, 112, 95 S. Ct. 854 (1975)). "[A]n officer may arrest a person if he has probable cause – meaning 'knowledge of facts and circumstances which would warrant a man of reasonable caution to believe that the defendant committed the criminal act in question.'" Kelly v. State, 997 N.E.2d 1045, 1051 (Ind. 2013) (quoting Peterson v. State, 674 N.E.2d 528, 536 (Ind. 1996) (quoting Bergfeld v. State, 531 N.E.2d 486, 490 (Ind. 1988)), reh'g denied, cert. denied, 522 U.S. 1078, 118 S. Ct. 858 (1998)). The existence of probable cause is a fact-sensitive determination. Id.

13

To effect a lawful arrest, Detective LaPossa needed to have probable cause to believe that Decker possessed child pornography as defined by Indiana law. See id. At the time of the offense, Ind. Code § 35-42-4-4(c) governed possession of child pornography and provided:

A person who knowingly or intentionally possesses:

    (1)    a picture;
    (2)    a drawing;
    (3)    a photograph;
    (4)    a negative image;
    (5)    undeveloped film;
    (6)    a motion picture;
    (7)    a videotape;
    (8)    a digitized image; or
    (9)    any pictorial representation;

that depicts or describes sexual conduct by a child who the person knows is less than sixteen (16) years of age or who appears to be less than sixteen (16) years of age, and that lacks serious literary, artistic, political, or scientific value commits possession of child pornography, a Class D felony.[4]

Ind. Code § 35-42-4-4(a)(4) provided:

"Sexual conduct" means sexual intercourse, deviate sexual conduct, exhibition of the uncovered genitals intended to satisfy or arouse the sexual desires of any person, sadomasochistic abuse, sexual intercourse or deviate sexual conduct with an animal, or any fondling or touching of a child by another person or of another person by a child intended to arouse or satisfy the sexual desires of either the child or the other person.

To the extent Decker suggests that Ind. Code § 35-42-4-4(c) is unduly vague, he does not cite to authority or develop the argument. Consequently, this argument is waived. See, e.g., Cooper v. State, 854 N.E.2d 831, 834 n.1 (Ind. 2006) (holding that the

---

[4] Subsequently amended by Pub. L. No. 181-2013, § 1, eff. May 7, 2013; Pub. L. No. 214-2013, § 38, eff. July 1, 2013; Pub. L. No. 158-2013, § 440, eff. July 1, 2014; Pub. L. No. 168-2014, § 69, eff. July 1, 2014.

defendant's contention was waived because it was "supported neither by cogent argument nor citation to authority"). Waiver notwithstanding, this court addressed a similar argument in <u>Logan v. State</u>, 836 N.E.2d 467, 473 (Ind. Ct. App. 2005), <u>trans.</u> <u>denied</u>, in which the defendant argued that the phrase, "exhibition of the uncovered genitals intended to satisfy or arouse the sexual desires of any person," under the definition of "sexual conduct" was vague. We noted that this was essentially the definition of "lewd" conduct, which the United States Supreme Court discussed at length in <u>N.Y. v. Ferber</u>, 458 U.S. 747, 102 S. Ct. 3348 (1982), and which found no constitutional infirmity. <u>Logan</u>, 836 N.E.2d at 473.

With respect to whether Detective LaPossa had probable cause, the record reveals that Geldof, the security guard at the library, informed Detective LaPossa that there was a male looking at pictures of child pornography. Geldof also told Detective LaPossa that when she approached the computer "there was a large image of a child laying on a bed with his penis visible." Transcript at 17. She also stated that Decker was clicking the icons and closing out some of the images when she asked him to quit closing them and step away from the computer. She told Detective LaPossa that she asked Decker if he often viewed "kiddie porn" at the library, and Decker stated that he did. <u>Id.</u> at 18. Gray, a library employee, told Detective LaPossa that she saw many images of children in which the children were nude or partially clothed in the pictures, that the photos were "not family-type photos," and that she "felt very uncomfortable and she was disturbed by the photos that she looked at." <u>Id.</u> at 17. Gray also told him that Gossman told her that he believed there was someone looking at child porn on the computer. Gossman told

15

Detective LaPossa that he was walking by and saw at least one picture of a small child that was naked.

Detective LaPossa looked at the computer screen and observed several images of different aged children in diapers posed in different positions, some of which Detective LaPossa thought were sexual positions, and that there were "at least probably thirty" images. Id. at 13. He testified that the children were "anywhere from an infant to approximately twelve years old," and "[s]ome of them looked family and some of them looked like they were specifically posed in a certain way." Id. at 19. During cross-examination, when asked whether he interpreted the photos at the library as being posed in sexual positions, he answered "[s]ome of them, I did, yes, ma'am." Id. at 51.

Based upon the record, we conclude that Detective LaPossa had probable cause to arrest Decker. Accordingly, we cannot say that the trial court erred in denying Decker's motion to suppress.

CONCLUSION

For the foregoing reasons, we affirm the trial court's denial of Decker's motion to suppress.

Affirmed.

BARNES, J., and BRADFORD, J., concur.

16