## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 29 2018, 10:42 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark Small
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Indiana Attorney General

Kelly A. Loy
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

|  |  |
|---|---|
| Jimmy Nave, Jr., <br> *Appellant-Petitioner,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Respondent.* | August 29, 2018 <br><br> Court of Appeals Case No. <br> 48A04-1708-PC-2007 <br><br> Appeal from the Madison Circuit Court <br><br> The Honorable David A. Happe, Judge <br><br> Trial Court Cause No. <br> 48C04-1412-PC-44 |

**Sharpnack, Senior Judge.**

## Statement of the Case

[1] Jimmy Nave, Jr., appeals the denial of his petition for post-conviction relief.

We affirm.

# Issue

Nave raises two issues, which we consolidate and restate as: whether the post-conviction court erred in rejecting his claims of ineffective assistance of trial counsel and appellate counsel.

# Facts and Procedural History

The facts of Nave's criminal case are as follows:

> On February 16, 2013, Ruth Clark, who was eighty-one years old at the time, left a shopping mall in Madison County and returned to her car in the mall parking lot. After Clark entered her car and sat in the driver's seat, a man later identified as Nave entered the back seat of her car, reached around Clark's seat, grabbed her by the face and mouth, and held a six-to-eight-inch knife to her neck. Clark was unable to move her arms due to this restraint by Nave but still attempted to call for help. Nave told her to "shut up" and ordered her to "drive." Tr. p. 31.
>
> Fortunately for Clark, Robert Derrickson, a mall employee who was in the parking lot at the time, heard Clark's muffled screams and responded. Derrickson saw Nave in Clark's car with his hand over her mouth. Derrickson went to the car and asked Nave, "what [is] going on[?]" Tr. pp. 56-57. When Nave saw Derrickson, he exited the other side of the vehicle. Nave did not immediately leave the vicinity and stood face-to-face with Derrickson briefly until he began to walk away and leave the mall area. Derrickson noticed that Nave had something dark in his hand but was unable to identify what it was. Derrickson later identified Nave as the man he had seen in Clark's car.
>
> As a result of this incident, Clark was visibly shaken. Although she initially told the police she was unhurt, she in fact had a bleeding wound on her face and later developed bruises on her face and hands.

On February 22, 2013, the State charged Nave with Class A felony kidnapping and Class B felony attempted carjacking. On June 24, 2013, a bench trial was held. Nave testified and admitted that he had gotten into Clark's car, but claimed that he did so only to confront her because she had backed into his vehicle. The trial court rejected Nave's version of events and found him guilty as charged.

*Nave v. State*, Cause No. 48A02-1307-CR-632, *1 (Ind. Ct. App. 2013), *trans. denied*.

[4] Nave appealed, claiming the evidence was insufficient to sustain his kidnapping conviction and that his sentence was inappropriate. A panel of this Court affirmed the trial court's judgment. *See id*.

[5] In 2014, Nave filed a petition for post-conviction relief. The post-conviction court held an evidentiary hearing on January 20, 2017 and denied the petition on June 7, 2017. This appeal followed.

## Discussion and Decision

### I. Standard of Review

[6] Post-conviction proceedings are civil proceedings in which the petitioner must prove claims by a preponderance of the evidence. *Hampton v. State*, 961 N.E.2d 480, 491 (Ind. 2012). When appealing from the denial of a petition for post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Campbell v. State*, 19 N.E.3d 271, 274 (Ind. 2014). "As such, the petitioner faces a rigorous standard of review." *Wesley v. State*, 788 N.E.2d 1247, 1250 (Ind. 2003). To prevail on appeal, the petitioner must show

that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Campbell*, 19 N.E.3d at 274.

[7] The post-conviction court issued findings of fact and conclusions thereon pursuant to Indiana Post-Conviction Rule 1(6). We review the post-conviction court's factual findings for clear error, but we review questions of law de novo. *Wilkes v. State*, 984 N.E.2d 1236, 1240 (Ind. 2013). The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Davison v. State*, 763 N.E.2d 441, 444 (Ind. 2002).

## II. Sixth Amendment Right to Effective Assistance of Counsel

[8] Nave claims his trial counsel made unreasonably deficient choices that resulted in him being found guilty. To demonstrate a violation of the Sixth Amendment right to effective assistance of counsel, a petitioner must prove the two components of the test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *Passwater v. State*, 989 N.E.2d 766, 770 (Ind. 2013). The petitioner must show that counsel's performance fell below an objective standard of reasonableness and that the deficient performance was prejudicial. *Bethea v. State*, 983 N.E.2d 1134, 1138 (Ind. 2013). A petitioner demonstrates prejudice by establishing a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id.* at 1138-39. We afford great deference to counsel's discretion to choose strategy and tactics. *McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002). Further, we

strongly presume that counsel provided adequate assistance and exercised reasonable professional judgment in all significant decisions. *Id.*

### 1. Probable Cause for Arrest

[9] Nave first argues his trial counsel should have moved to suppress all evidence obtained from his warrantless arrest because he believes there was no probable cause. As a result, he claims the arrest violated his federal and state constitutional protections against unreasonable search and seizure, and if counsel had filed a motion to suppress, the motion would have been granted.

[10] The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

[11] Article one, section eleven of the Indiana Constitution contains similar language:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

[12] In Indiana, a police officer may arrest a person without a warrant if the officer has "probable cause to believe the person has committed or attempted to commit, or is committing or attempting to commit, a felony . . . ." Ind. Code §

35-33-1-1 (2005). When a person is arrested without a warrant, the following procedure applies:

> (a) At or before the initial hearing of a person arrested without a warrant for a crime, the facts upon which the arrest was made shall be submitted to the judicial officer, ex parte, in a probable cause affidavit. In lieu of the affidavit or in addition to it, the facts may be submitted orally under oath to the judicial officer. If facts upon which the arrest was made are submitted orally, the proceeding shall be recorded by a court reporter, and, upon request of any party in the case or upon order of the court, the record of the proceeding shall be transcribed.

> (b) If the judicial officer determines that there is probable cause to believe that any crime was committed and that the arrested person committed it, the judicial officer shall order that the arrested person be held to answer in the proper court. If the facts submitted do not establish probable cause or if the prosecuting attorney informs the judicial officer on the record that no charge will be filed against the arrested person, the judicial officer shall order that the arrested person be released immediately.

Ind. Code § 35-33-7-2 (1982).

[13] An officer filed a probable cause affidavit after Nave's arrest. Nave claims that the facts and circumstances, as set forth in the probable cause affidavit, do not establish probable cause for his arrest. Probable cause to arrest exists when, at the time of the arrest, the officer has knowledge of facts and circumstances that would warrant a reasonable person to believe that the suspect has committed the criminal act in question. *Clark v. State*, 808 N.E.2d 1183, 1192 (Ind. 2004). The amount of evidence necessary to meet the probable cause requirement is determined on a case-by-case basis. *Id.* It is grounded in notions of common

sense, not mathematical precision. *Id.* Probable cause requires only a fair probability of criminal activity, not a prima facie showing, and may be established by evidence that would not be admissible at trial. *Lamagna v. State*, 776 N.E.2d 955, 958 (Ind. Ct. App. 2002). Information received from witnesses can serve as the basis for probable cause to arrest an individual. *Decker v. State*, 19 N.E.3d 368, 373 (Ind. Ct. App. 2014), *trans. denied*.

[14] In the current case, the probable cause affidavit stated that Ruth Clark described her assailant as an African-American male wearing "dark clothing, dark knit cap and dark jacket." Appellant's App. Vol. 2, p. 6. She further stated the assailant left the scene by walking to the north corner of the mall. Similarly, Robert Derrickson described the suspect as an African-American male wearing "Blk [sic] cap, leather looking coat, dark pants possibly work pants." *Id.* He told the officer the suspect walked north around the mall.

[15] Next, the affidavit indicates Nave arrived at Manie Vive's garage to ask for a ride. Vive described Nave's clothing to the officer and gave the officer Nave's name. The clothing was "the same described by the victim and witness." *Id.* Vive told the police Nave said he had just come from the mall.

[16] Another officer went to Nave's residence and saw a "similar looking male" walk up to the home. *Id.* at 7. The male identified himself as Nave's brother, Chris Nave. Chris told the officer that Nave had called him to say he was "in trouble." *Id.*

[17] The foregoing evidence from the probable cause affidavit would warrant a reasonable person to believe that Nave was the person who attacked Clark. Clark, Derrickson, and Vive described his clothing, and Vive knew Nave's name. Nave argues that the affidavit contains inconsistencies and uncorroborated hearsay, but the State was not obligated to provide proof beyond a reasonable doubt in the affidavit. Under these circumstances, Nave's counsel did not perform deficiently by failing to file a motion to suppress because the motion would not have been granted.

## 2. In-Court Identification and Due Process of Law

[18] Nave argues his trial counsel rendered ineffective assistance by failing to object to Robert Derrickson's in-court identification of Nave as the person who attacked Clark. "[T]o prevail on a claim of ineffective assistance due to the failure to object, the defendant must show an objection would have been sustained if made." *Overstreet v. State*, 877 N.E.2d 144, 155 (Ind. 2007).

[19] Nave argues Derrickson's in-court identification was improper because the process through which Derrickson originally identified Nave for the police was unduly suggestive. "There is a degree of suggestiveness which is inherent in all in-court identifications; the practical necessity of having the appellant sit at the defendant's table with defense counsel naturally sets him apart from everyone else in the courtroom." *Jeter v. State*, 888 N.E.2d 1257, 1266 (Ind. 2008). Nevertheless, a defendant's Fourteenth Amendment due process right may be violated by the admission of identification evidence that is the product of

unduly suggestive procedures. *Young v. State*, 700 N.E.2d 1143, 1146 (Ind. 1998).

[20] We must consider the facts surrounding the pretrial procedure, including the manner and form in which the police asked the witness to attempt the identification and the witness's interpretation of their directives, and whether officials singled out the defendant as the suspect they most had in mind either by their attitude displayed toward appellant or by the physical constitution of the photo array or corporeal lineup. *Brooks v. State*, 560 N.E.2d 49, 55 (Ind. 1990). Whether a particular identification procedure rises to a level of suggestiveness that constitutes reversible error must be determined from the context of the case. *Jeter*, 888 N.E.2d at 1266. Inconsistencies in identification testimony affect the credibility of the witness, not the admissibility of the identification. *Harris v. State*, 619 N.E.2d 577, 581 (Ind. 1993).

[21] Derrickson testified at Nave's criminal trial. He stated that when he approached Clark's car and yelled, Nave got out of the car on the other side and "kind of stood there" before walking away. Tr. Transcript Vol. 1, p. 57. Derrickson agreed that he had gotten "a good look" at Nave after the attack and identified him in court as the perpetrator. *Id.* at 65.

[22] Detective Scott Sanderson interviewed Derrickson on February 16, 2013, after the attack. Derrickson agreed that he could possibly identify Clark's attacker. The detective showed Derrickson a photographic lineup, saying "Just take your time and look and tell me if you see anybody that looks like that person. And if

you don't know, you just don't know. That's fine, too." PCR Tr. Vol. 3, p. 10. The State did not preserve the lineup, and the record does not indicate whether a picture of Nave was included in the lineup. Derrickson was unable to identify anyone as the attacker.

[23] Detective Sanderson told Derrickson the lineup "isn't good" and that he wanted to find "a lot clearer photo." *Id.* He offered to create another lineup, "a better one maybe." *Id.* at 11. The detective stressed, "So if you don't really know a hundred percent, I mean, I don't want you to just pick." *Id.* Derrickson agreed he would review a "better photo lineup" later. *Id.*

[24] On February 26, 2013, Detective Sanderson presented a different photographic lineup to Derrickson. He identified Nave as the attacker. At Nave's trial, Derrickson testified about his inability to identify anyone in the February 13, 2013 lineup and his identification of Nave in the February 26, 2013 lineup.

[25] Nave argues we must presume that his photograph was included in the first photo array because the State failed to preserve the array. Reply Br. p. 6 (citing *Loomis v. Ameritech Corp.*, 764 N.E.2d 658 (Ind. Ct. App. 2002), *trans. denied*). Even if Nave is correct, any inconsistencies between Derrickson's reactions to the February 13 and February 26 lineups would be relevant to his credibility, not to the admissibility of Derrickson's identification of Nave. Further, Detective Sanderson never singled out Nave as a suspect or implied that a suspect was included in the February 13, 2013 lineup. To the contrary, the

detective stressed that he was interested only in Derrickson's honest, accurate response regardless of the result.

[26] Nave claims that during Detective Sanderson's February 13, 2016 presentation of the photographic lineup, the detective specifically pointed out Nave's photograph to Derrickson. We disagree with Nave's reading of the record. After Derrickson indicated he would be willing to review another photographic lineup on a later occasion, Detective Sanderson stated as follows:

> This one here was really kind of a spur of the moment thing, and I thought if somebody got a really great look at somebody, they might have been able to tell. I knew it would probably be a little difficult. When you came out of the mall, before that incident, you don't remember ever seeing this guy anywhere (inaudible) when you seen [sic] him today at all?

PCR Tr. Vol. III, p. 11. We are obligated to review the post-conviction record in the light most favorable to the judgment, and we read Sanderson's question as a general question rather than as pointing to a specific picture in the photographic lineup.

[27] To summarize, we conclude the pretrial identification procedures were not unduly suggestive, and the trial court's admission of Derrickson's in-court identification of Nave as the attacker did not violate Nave's right to due process of law. *See Harris*, 619 N.E.2d at 581 (witness's change of mind in description of suspect went to credibility, not to admissibility of identification). Nave's trial counsel did not render ineffective assistance in failing to object to the in-court identification because the objection would have been overruled.

### 3. Appellate Counsel

Nave argues he received ineffective assistance of appellate counsel for failing to challenge the probable cause for his arrest and for failing to challenge Derrickson's in-court identification of him as the suspect. Claims of ineffective assistance of appellate counsel are governed by the two-part *Strickland* test discussed above. *Carter v. State*, 929 N.E.2d 1276, 1278 (Ind. 2010). We have already determined that Nave did not receive ineffective assistance of trial counsel on the issues of probable cause and in-court identification. Accordingly, his claims of ineffective assistance of appellate counsel on these issues must also fail.

# Conclusion

For the reasons stated above, we affirm the judgment of the post-conviction court.

Affirmed.

Kirsch, J., and Crone, J., concur.