

IN THE

# Court of Appeals of Indiana

Jeff Lane,

*Appellant-Plaintiff*



FILED

Jul 26 2024, 8:55 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

v.

Menard, Inc., Majestic Security, Inc., and Roberto Salgado,

*Appellees-Defendants*

---

July 26, 2024

Court of Appeals Case No.
23A-PL-2920

Appeal from the Lake Superior Court

The Honorable Stephen E. Scheele, Judge

Trial Court Cause No.
45D05-2208-PL-464

---

**Opinion by Judge Tavitas**
Judges Crone and Bradford concur.

**Tavitas, Judge.**

## Case Summary

Jeff Lane filed a complaint against Menard, Inc. ("Menards"),[1] Majestic Security, Inc. ("Majestic"), and Roberto Salgado (collectively "the Defendants"), in which Lane alleged confinement, false imprisonment, assault, negligence, negligent hiring and supervision, and intentional infliction of emotional distress. The Defendants filed a motion for summary judgment, which the trial court granted.

Lane appeals and presents several issues, which we consolidate and restate as whether there was a genuine issue of material fact regarding whether the Defendants had probable cause to believe Lane committed theft, thereby justifying the Defendants' brief detention of Lane. We conclude that the designated evidence shows the Defendants did have probable cause. Accordingly, we affirm the grant of summary judgment to Defendants.

## Issues

Lane presents five issues, which we consolidate and restate as whether there are genuine issues of material fact regarding whether the Defendants had probable cause to believe Lane committed theft, thereby justifying the Defendants' brief detention of Lane.

---

[1] The retail stores operated by Menard, Inc. are called "Menards." *See, e.g.*, Appellant's App. Vol. II p. 122.

## Facts

On July 20, 2022, Lane went to a Menards store in Hammond, Indiana, to buy supplies for the remodeling of his home. Lane wore a blue t-shirt and cargo shorts. While shopping, Lane took a "buck" knife off of a peg and placed it in his shopping basket. Appellant's App. Vol. III p. 67. The knife was in yellow cardboard and plastic packaging. Lane then went to the electrical department of the store to find electric plate covers. Lane also purchased blades for his utility knife. According to Lane, he decided not to buy the knife due to its $59.99 price, so he took the knife out of his basket and placed it somewhere in the store. Although he could not remember precisely where, Lane later acknowledged that he could have placed the knife in the electrical department of the store. Lane eventually purchased the other items in his basket and left the store.

Earlier that same morning, Roberto Salgado—an employee of Majestic assigned to work security at Menards—arrived at the Menards store to work as a loss prevention officer.[2] As part of his morning routine, Salgado performed an inventory check on high-theft items, which includes knives. Sometime after completing the inventory, Salgado noticed that the frontmost buck knife on a peg that he had just inventoried was no longer there. Salgado scanned the SKU number for the knife and checked the store's computer system, which revealed

---

[2] At this stage in the proceedings, there appears to be no argument that Salgado was acting as an agent of Menards. Majestic and Salgado admitted that Salgado "represented himself as, and was acting as, an agent of Menard" at the time of the incident involving Lane. Appellant's App. Vol. II p. 33.

that no buck knives of that type had been sold that day. Salgado then reviewed the security camera video from that morning and saw that only one person— later identified as Lane—had taken a buck knife and placed it in his shopping basket. Salgado determined that Lane had left the store, so Salgado checked the store to see if the knife had been placed on a shelf while Lane was out of the camera's view. Salgado, however, was unable to locate the knife. Salgado then viewed other security footage to track Lane's conduct while in the store. This video revealed that, after Lane put the knife in his shopping basket, he went to the electrical department of the store, where there are no security cameras. After a few moments in this area, Lane reappeared, but the knife was no longer in his shopping basket.

[6] Later that day, Anthony Perez arrived at the Menards store. Perez was Salgado's supervisor and also an employee of Majestic assigned to work at Menards. Salgado told Perez about the missing knife. The two watched the security video together and confirmed that Lane was the only person to have handled the type of knife that was missing. Perez completed an incident report, which provided in relevant part:

> Buck knife was missing off the shelf and before that, counts were full on knifes on correct amount on peg previously. And after doing rounds again knife was gone. After further review unknown subject took knife off the peg and walked around for aw[h]ile and seen subjects last point of view by electrical and he had knife on camera. Then after a few mins subject was in view of camera again with no knife. Subject then went to check out bought a few items and left. Subject left without further incident.

Appellant's Appl Vol. II p. 124.[3]

[7] A "few days" later, a Menards employee found the knife packaging in the electrical area of the store.[4] *Id*. at 156. The package had been cut open, and the knife was missing. Based on these events, Salgado believed that he had probable cause that the buck knife was stolen on July 20, 2022; Perez concurred in this assessment.

[8] On July 27, 2022, Lane returned to the Menards store wearing the same blue shirt he had worn on July 22. Salgado approached Lane shortly after Lane entered the store and informed Lane, "I need to talk to you. Come with me." *Id*. at 197. Salgado took Lane to the security office. Salgado never told Lane that he was free to leave, nor did Lane attempt to leave. Lane was not handcuffed, but Salgado did briefly block the door to the office. Sometime during the interview, Salgado placed his arm across the door. Salgado

---

[3] This portion of the report was typed in all capital letters. For the sake of readability, we have changed the text to lower case where applicable. All grammatical and spelling errors are in the original.

[4] In his reply brief, Lane claims that there is no designated evidence to show that the packaging was found in the electrical area of the store. He is incorrect. Salgado testified in his deposition that, although he did not personally find the package, "[s]omebody" found the package "in the electrical department[.]" Appellant's App. Vol. II p. 156. Salgado further testified that an employee in the electrical department found the package, although he did not know which employee. *Id*. at 158.

Lane also claims that Salgado "recanted" this testimony. Appellant's Br. p. 3. This is also incorrect. The testimony Lane refers to occurred **before** the above-quoted testimony. Specifically, when asked how he knew the package was found in the electrical department, Salgado stated, "You know, they didn't tell us – you know, when we walk around, then they – you know, they point stuff off to us and they said it's in the – hey we found a package and we brought it to the room there." Appellant's App. Vol. II p. 158. When asked who he meant by "they," Salgado clarified, "The electrical department. One of the employees." *Id*. When asked, "So you're saying one of the . . . employees in the electrical department found it [i.e., the package]," Salgado responded in the affirmative. *Id*. Salgado later admitted that he did not remember specifically which employee. This evidence does not support Lane's assertion that Salgado recanted his testimony.

questioned Lane about the missing knife. Lane, however, steadfastly denied that he had taken the knife. Salgado also asked for Lane's driver's license, which Salgado took and photocopied. When Salgado left the room to photocopy Lane's driver's license, Lane telephoned his father. When Salgado returned, he handed Lane a civil restitution form, but Lane refused to sign the form. Salgado told Lane, "Okay. You don't have to sign it." *Id*. at 200. Because the knife was valued at under $200, Salgado did not call the police. Salgado also told Lane to pose for a "mug shot." *Id*. at 162. After taking Lane's photo, Salgado told Lane that he was free to leave. Lane then left the security office and completed his shopping trip. Lane was in the security office for less than fifteen minutes.

[9] On August 12, 2022, Lane filed a complaint against the Defendants. Lane filed an amended complaint on January 12, 2023, in which he alleged confinement, false imprisonment, assault, negligence, negligent hiring and supervision, and intentional infliction of emotional distress.

[10] On June 21, 2023, the Defendants filed a motion for summary judgment along with a brief in support thereof and a designation of evidence. The Defendants argued that they were statutorily immune from suit because they had probable cause to detain Lane. Lane filed a response to the Defendants' summary judgment motion on July 6, 2023, along with his designation of evidence. The trial court held a hearing on the summary judgment motion on November 8, 2023, at the conclusion of which it took the matter under advisement.

On December 6, 2023, the trial court entered an order granting summary judgment in favor of the Defendants. This order provides in relevant part:

> After due consideration of all designated evidence in a light most favorable to the non-movant/Plaintiff, the Court now FINDS and DETERMINES that: 1) the Defendants had probable cause to believe a theft of merchandise occurred from their retail premises on or about 07/27/2022; 2) the Defendants had probable cause to believe the Plaintiff had committed this theft; 3) the Defendants' ensuing detention of the Plaintiff to investigate this theft was conducted in a reasonable manner; 4) I.C. § 35-33-6-1, et. seq. (the Indiana Shoplifting Detention Act) precludes the Defendants from liability in this case; and 5) the Motion for Summary Judgment as filed on 06/26/2023 should be GRANTED.

Appellant's App. Vol. II p. 15. Lane now appeals.

## Discussion and Decision

### I. Summary Judgment Standard

Lane challenges the trial court's grant of summary judgment to the Defendants on Lane's amended complaint. "'When this Court reviews a grant or denial of a motion for summary judgment, we stand in the shoes of the trial court.'" *Minser v. DeKalb Cnty. Plan Comm'n*, 170 N.E.3d 1093, 1098 (Ind. Ct. App. 2021) (quoting *Burton v. Benner*, 140 N.E.3d 848, 851 (Ind. 2020)). "Summary judgment is appropriate 'if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id*. (quoting *Murray v. Indianapolis Pub. Schs.*, 128 N.E.3d 450, 452 (Ind. 2019)); *see also* Ind. Trial Rule 56(C).

The summary judgment movant invokes the burden of making a *prima facie* showing that there is no issue of material fact and that it is entitled to judgment as a matter of law. *Burton*, 140 N.E.3d at 851. The burden then shifts to the non-moving party which must then show the existence of a genuine issue of material fact. *Id.* On appellate review, we resolve "[a]ny doubt as to any facts or inferences to be drawn therefrom . . . in favor of the non-moving party." *Id.* We review the trial court's ruling on a motion for summary judgment de novo, and we take "care to ensure that no party is denied his day in court." *Schoettmer v. Wright*, 992 N.E.2d 702, 706 (Ind. 2013). "We limit our review to the materials designated at the trial level." *Gunderson v. State, Ind. Dep't of Nat. Res.*, 90 N.E.3d 1171, 1175 (Ind. 2018), *cert. denied*.

## II. The Indiana Shoplifting Detention Act

Indiana Code Chapter 35-33-6, known as the "Shoplifting Detention Act, 'permits the merchant's agent to effect a warrantless arrest or detention where the facts and circumstances known to the agent at the time of the arrest would warrant a person of reasonable caution to believe the arrestee has committed or is committing a theft on or about the store.'" *Neff v. Wal-Mart Stores E., LP*, 113 N.E.3d 666, 671 (Ind. Ct. App. 2018) (quoting *Dietz v. Finlay Fine Jewelry Corp.*, 754 N.E.2d 958, 967 (Ind. Ct. App. 2001)), *trans. denied*. Specifically, Section 2 of the Act provides:

(a) An owner or agent of a store who has probable cause to believe that a theft **has occurred**[5] or is occurring on or about the store **and who has probable cause to believe that a specific person has committed or is committing the theft**:

(1) may:

(A) detain the person and request the person to identify himself or herself;

(B) verify the identification;

(C) determine whether the person has in the person's possession unpurchased merchandise taken from the store;

(D) inform the appropriate law enforcement officers; and

(E) inform the person's parents or others interested in the person's welfare that the person has been detained . . . .

* * * * *[6]

(c) The detention must:

(1) be reasonable and last only for a reasonable time; and

(2) not extend beyond the arrival of a law enforcement officer or two (2) hours, whichever first occurs.

---

[5] Lane claims that the Act does not apply to the present case because his detention occurred five days after his initial visit to the Menards store. We disagree. The Act clearly and unambiguously applies when the merchant or its agent has probable cause to believe that a theft "is occurring," referring to something that is presently occurring, or "has occurred," referring to something that has occurred in the past.

[6] The omitted portion of the statute applies only to suspected shoplifters who are under the age of eighteen. Since Lane was born in 1968, these provisions are inapplicable here.

Ind. Code § 35-33-6-2.[7] "A merchant who detains a suspected thief under the Act must meet the same requirements for probable cause as a police officer would." *Haltom v. Bruner & Meis, Inc.*, 680 N.E.2d 6, 9 (Ind. Ct. App. 1997).

[15] The Act also provides immunity to store owners and their agents from claims arising out of a detention authorized by the Act:

> A civil or criminal action against:
>
> > (1) an owner or agent of a store or motion picture exhibition facility; or
> >
> > (2) a law enforcement officer;
>
> may not be based on a detention that was lawful under section 2 or 2.5 of this chapter. However, the defendant has the burden of proof that the defendant acted with probable cause under section 2 or 2.5 of this chapter.

Ind. Code § 35-33-6-4.

## III. Probable Cause

[16] In the context of law enforcement, "[p]robable cause to arrest exists when, at the time of the arrest, the officer has knowledge of facts and circumstances that

---

[7] Section 5 of the Act provides:

> An owner or agent of a store may act in the manner permitted by section 2 of this chapter on information received from any employee of the store, if that employee has probable cause to believe that a:
>
> > (1) theft has occurred or is occurring in or about the store; and
> >
> > (2) specific person has committed or is committing the theft.

Ind. Code § 35-33-6-5

would warrant a reasonable person to believe that the suspect has committed the criminal act in question." *Clark v. State*, 808 N.E.2d 1183, 1192 (Ind. 2004) (citing *Berger v. New York*, 388 U.S. 41, 55, 87 S. Ct. 1873 (1967)). "The amount of evidence necessary to meet the probable cause requirement is determined on a case-by-case basis." *Id.* (citing *Ortiz v. State*, 716 N.E.2d 345, 348 (Ind. 1999)). The determination of probable cause "is grounded in notions of common sense, not mathematical precision." *Id.* (citing *Ogle v. State*, 698 N.E.2d 1146, 1148 (Ind. 1998)).

[17]   Our Supreme Court has explained:

> Probable cause is not a high bar, and is cleared when the totality of the circumstances establishes a fair probability—not proof or a prima facie showing—of criminal activity, contraband, or evidence of a crime. Accordingly, probable cause does not establish guilt. In fact, innocent activity will often supply a basis for showing probable cause.
>
> The probable-cause standard is also a fluid concept. It is not readily, or even usefully, reduced to a neat set of legal rules, and it cannot be quantified into percentages. This is because probable cause turn[s] on the assessment of probabilities in particular factual contexts, and it depends on the totality of the circumstances, viewed as a whole.

*Hodges v. State*, 125 N.E.3d 578, 581-82 (Ind. 2019) (citations and internal quotations omitted).

[18]   Moreover, we have explained:

> In the abstract, probable cause is a pure question of law, but its existence in a given case is a mixed question of law and fact, when one or more of the elementary facts thereof, relied upon, is controverted . . . . Where the facts are uncontroverted, the court must determine the existence or nonexistence of probable cause.

*Wells v. Bernitt*, 936 N.E.2d 1242, 1253 (Ind. Ct. App. 2010) (quoting *Wong v. Tabor*, 422 N.E.2d 1279, 1285 (Ind. Ct. App. 1981)), *trans. denied*.

## IV. The Defendants had probable cause to believe that Lane committed theft.

[19] Here, the Defendants successfully argued to the trial court that Salgado had probable cause to believe that Lane committed a theft. On appeal, Lane claims that the trial court erred and that, considering only the information known to Salgado at the time he detained Lane, no probable cause existed.[8]

[20] Here, the facts are not wholly uncontroverted; instead, we must consider only the designated evidence in the light most favorable to the non-moving party, which, here, is Lane. Even so, we conclude that the designated evidence—even when viewed in the light most favorable to Lane—shows that there was sufficient evidence for the Defendants to conclude that, at the time that Lane

---

[8] Lane's briefs are replete with personal, ethical attacks on opposing counsel. We remind counsel that "'[p]etulant grousing' and 'hyperbolic barbs' do not suffice as cogent argument as required by our appellate rules." *Basic v. Amouri*, 58 N.E.3d 980, 985 (Ind. Ct. App. 2016) (quoting *County Line Towing, Inc. v. Cincinnati Ins. Co.*, 714 N.E.2d 285, 291 (Ind. Ct. App. 1999), *trans. denied*). We also note that Lane has filed a motion for sanctions, claiming that counsel for Menards made false statements in its appellee's brief. Lane also filed a motion for leave to file a reply to Menards' response to his motion for sanctions. We have considered these motions and found them to be without merit. Accordingly, we deny Lane's motions by an order issued contemporaneous with this opinion. Lane's brief also makes reference to his counsel's personal experience as a law enforcement officer and an attorney. Such personal anecdotes are not part of the record on appeal, and we, therefore, do not consider them in our analysis.

was detained,[9] there was probable cause to believe that Lane had committed theft. The Shoplifting Detention Act, therefore, precludes Lane's claims against the Defendants.

[21] Specifically, it is uncontroverted that Lane entered the Menards store on July 20, 2022. He took a buck knife, which was in a yellow plastic and cardboard package, from the shelf and placed it in his shopping basket. He then went to the electrical department, where security cameras could not record his actions. Lane claims—and for purposes of summary judgment, we take as true—that he decided against purchasing the knife and placed it on a random shelf. When Lane came back into view of the security cameras, the knife was no longer in his shopping basket.[10] Soon thereafter, Salgado noticed that one of the buck knives was missing from his recent inventory check. Salgado accessed the store's computer system, which revealed that no knife had been sold that day. When he viewed security video, he confirmed that Lane was the only customer who picked up a buck knife. Salgado searched the store but did not find the

---

[9] We agree with Lane that facts learned or discovered after the fact of Lane's detention cannot be considered. *See Decker v. State*, 19 N.E.3d 368, 377 (Ind. Ct. App. 2014) ("Probable cause to arrest exists when, at the time of the arrest, the officer has knowledge of facts and circumstances that would warrant a reasonable person to believe that the suspect has committed the criminal act in question.") (citing *Clark v. State*, 808 N.E.2d 1183, 1192 (Ind. 2004)).

[10] Lane claims that the security video is not sufficiently clear to confirm whether the knife package was in his shopping basket when he came back into view of the cameras. Lane, however, has failed to provide us with a copy of the video on appeal. *See Bank of Am., N.A. v. Cong.-Jones*, 122 N.E.3d 859, 863 (Ind. Ct. App. 2019) ("[I]t is an appellant's duty to provide an adequate record for review.") (citing *Page v. Page*, 849 N.E.2d 769, 771 (Ind. Ct. App. 2006)). Moreover, Salgado testified at his deposition that he could see the yellow knife packaging in Lane's basket before Lane went into the electrical department and that, when Lane came out of that department, Salgado could no longer see the knife package.

knife or its package. A few days later, another employee found an empty package in the electrical department.[11]

[22] This evidence provided the Defendants with knowledge of facts and circumstances that would warrant a reasonable person to believe that Lane committed theft. We conclude that these facts are sufficient to establish as a matter of law that the Defendants had probable cause to believe that Lane had committed a theft on July 20, 2022.[12]

## V. Lane's Detention was Reasonable

[23] The Act also provides that, for the merchant to be immune from suit under the Act, the detention of the suspected shoplifter must be reasonable. *See* I.C. § 35-33-6-2(c) ("The detention must . . . (1) be reasonable and last only for a reasonable time; and (2) not extend beyond the arrival of a law enforcement officer or two (2) hours, whichever first occurs."). Lane argues that the actions of the Defendants here were unreasonable. Again, we disagree.

---

[11] Lane claims that the knife package was "unauthenticated," and therefore should not be considered in determining the propriety of summary judgment. Appellant's Br. p. 23. Lane fails, however, to cite to any authority supporting his argument. We would be within our discretion to consider this argument waived. *See* Ind. Appellate Rule 46(A)(8)(a) (requiring that arguments presented on appeal to be supported by "citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on[.]" Moreover, Indiana Evidence Rule 901 provides in relevant part, "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Here, there was designated evidence that the knife packaging at issue was found in the store. Lane's claim that there is no proof that this is the same knife package he picked up and later placed on a shelf does not negate the fact that the empty knife packaging was later found.

[12] Lane argues that Salgado did not know at the time of the detention that Lane had purchased blades for his utility knife. We too do not consider the fact that Lane purchased these blades.

[24]     The evidence regarding Lane's detention is uncontroverted. As detailed above, when Lane returned to the Menards store seven days after the knife went missing, Salgado approached Lane shortly after Lane entered the store and told Lane that he needed to talk with Lane. Salgado took Lane to the security office and confronted him about the knife. Salgado did briefly block the door with his body and, at one point, placed his arm across the door. Salgado did not tell Lane that he was free to leave. Lane denied taking the knife and provided Salgado with his driver's license, which Salgado photocopied. Salgado also took a photo of Lane. The entire encounter in the security office took less than fifteen minutes, and Salgado did not physically restrain Lane. Because of the low monetary value of the knife, Salgado declined to call the police and permitted Lane to continue shopping.

[25]     Lane's detention was very short and did not involve any physical restraint. Given this designated evidence, Lane has failed to demonstrate a genuine issue of material fact, and we conclude as a matter of law that Lane's detention was reasonable.

## Conclusion

[26]     The designated evidence reveals no genuine issue of material fact regarding whether the Defendants had probable cause to believe Lane had committed theft. To the contrary, the designated evidence shows that the Defendants did have such probable cause. Similarly, the designated evidence shows that Lane's less-than-fifteen-minute detention was reasonable. Accordingly, we affirm the trial court's grant of summary judgment to the Defendants.

[27] Affirmed.

Crone, J., and Bradford, J., concur.

ATTORNEY FOR APPELLANT

Christopher Cooper
Law Office of Christopher Cooper, Inc.
Griffith, Indiana

ATTORNEYS FOR APPELLEES

James H. Milstone
Justin G. Wyss
Kopka Pinkus Dolin PC
Carmel, Indiana